No. 23-5600

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

―――――――――

L.W., by and through parents and next friends, Samantha Williams and
Brian Williams, et al., *Plaintiffs-Appellees*,

and

UNITED STATES OF AMERICA, *Intervenor-Appellee*,

v.

JONATHAN THOMAS SKRMETTI, in his official capacity as the
Tennessee Attorney General and Reporter, et al., *Defendants-Appellants*.

―――――――――

On Appeal from the United States District Court for the
Middle District of Tennessee (No. 3:23-cv-00376) (Richardson, J.)

―――――――――

## EMERGENCY MOTION FOR STAY OF
## PRELIMINARY INJUNCTION PENDING APPEAL

―――――――――

JONATHAN SKRMETTI
  Attorney General & Reporter
CLARK L. HILDABRAND
  Senior Counsel
STEVEN J. GRIFFIN
RYAN N. HENRY
BROOKE A. HUPPENTHAL
  Assistant Attorneys General
OFFICE OF THE TENNESSEE ATTORNEY
GENERAL & REPORTER
P.O. Box 20207
Nashville, Tennessee 37202
(615) 253-5642
clark.hildabrand@ag.tn.gov

ADAM K. MORTARA
LAWFAIR LLC
40 Burton Hills Blvd., Suite 200
Nashville, TN 37215
(773) 750-7154
mortara@lawfairllc.com

CAMERON T. NORRIS
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com

# TABLE OF CONTENTS

INTRODUCTION..................................................................................2

BACKGROUND...................................................................................4

    I.  Statutory Background..........................................................4

    II.  Procedural Background .......................................................5

STANDARD OF REVIEW .................................................................6

ARGUMENT .......................................................................................7

    I.   Tennessee will likely succeed on appeal ...............................8

    A. The Act is likely constitutional...........................................8

        1.  The Act equally protects minors of both sexes ...........................8

        2.  Transgender individuals are not a quasi-suspect class.............10

        3.  Parents lack a fundamental right to subject their children to such harmful procedures..................................12

        4.  The scientific debate shows that the Act survives any level of scrutiny ..................................14

    B. The district court could not enjoin enforcement statewide ............. 17

    C. Plaintiffs did not prove that a preliminary injunction was necessary to prevent their alleged harms............................... 20

    II.   Tennessee will suffer irreparable harm without a stay ........................ 23

    III.   Tennessee wins the balance of equities and public interest.................. 23

CONCLUSION ................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A. Philip Randolph Inst. v. Husted,*
  907 F.3d 913 (6th Cir. 2018) .............................................................7

*Adams v. Barrett,*
  5 Ga. 404 (1848) ............................................................................10

*Adams v. Sch. Bd. of St. Johns Cnty.,*
  57 F.4th 791 (11th Cir. 2022) .......................................................12

*Arizona v. Biden,*
  31 F.4th 469 (6th Cir. 2022) .........................................................19

*Arizonans for Official English v. Arizona,*
  520 U.S. 43 (1997)..........................................................................22

*Boe v. Marshall,*
  No. 2:22-cv-184-LCB, Doc.208 (M.D. Ala. Dec. 27, 2022)..............16

*Bostock v. Clayton Co.,*
  140 S.Ct. 1731 (2020).................................................................. 9-10

*Brandt v. Rutledge,*
  2022 WL 16957734 (8th Cir. Nov. 16) ...........................................10

*Bristol Reg'l Women's Ctr., P.C. v. Slatery,*
  7 F.4th 478 (6th Cir. 2021) (en banc) ..............................................7

*California v. Texas,*
  141 S.Ct. 2104 (2021)......................................................................19

*Cameron v. EMW Women's Surgical Ctr., P.S.C.,*
  142 S.Ct. 1002 (2022).....................................................................23

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.,*
  511 F.3d 535 (6th Cir. 2007) .........................................................22

*City of Cleburne v. Cleburne Living Ctr.,*
  473 U.S. 432 (1985)........................................................................11

*Clark v. Jackson,*
  2023 WL 2787325 (6th Cir. Apr. 5) ...............................................13

*Dobbs v. Jackson Women's Health Organization,*
  142 S.Ct. 2228 (2022)........................................... 7, 9, 12-14

*Doe v. Ladapo*
  2023 WL 3833848 (N.D. Fla. June 6) .............................................18

*Edgar v. MITE Corp.,*
  457 U.S. 624 (1982).........................................................................21

*Farnsworth v. Nationstar Mortg., LLC,*
   569 F. App'x 421 (6th Cir. 2014) ............................................................ 22, 23
*Geduldig v. Aiello,*
   417 U.S. 484 (1974) ............................................................................... 9, 12
*In re MCP No. 165,*
   20 F.4th 264 (6th Cir. 2021) ............................................................................8
*Kanuszewski v. Mich. Dep't of Health & Hum. Servs.,*
   927 F.3d 396  (6th Cir. 2019) ................................................................ 13-14
*Kentucky v. Biden,*
   57 F.4th 545 (6th Cir. 2023) ...................................................................... 18
*Kentucky v. Yellen,*
   54 F.4th 325 (6th Cir. 2022) ...................................................................... 19
*Memphis Ctr. for Reproductive Health v. Slatery,*
   No. 20-5969 (6th Cir.) ............................................................................1, 6
*Meriwether v. Hartop,*
   992 F.3d 492 (6th Cir. 2021) ...................................................................... 10
*Ohio Citizen Action v. City of Englewood,*
   671 F.3d 564 (6th Cir. 2012) ...................................................................... 19
*Ohio v. Yellen,*
   539 F. Supp. 3d 802 (S.D. Ohio 2021) ......................................................21
*Ondo v. City of Cleveland,*
   795 F.3d 597 (6th Cir. 2015) ................................................................ 10-11
*Pelcha v. MW Bancorp, Inc.,*
   988 F.3d 318 (6th Cir. 2021) ...................................................................... 10
*Performance Unlimited, Inc. v. Questar Publishers, Inc.,*
   52 F.3d 1373 (6th Cir. 1995) .......................................................................7
*Preterm-Cleveland v. McCloud,*
   994 F.3d 512 (6th Cir. 2021) (en banc) .................................................. 13, 17
*Priorities USA v. Nessel,*
   978 F.3d 976 (6th Cir. 2020) ....................................................................6, 7
*Reed v. Reed,*
   404 U.S. 71 (1971) ...........................................................................................9
*Thompson v. DeWine,*
   976 F.3d 610 (6th Cir. 2020) ......................................................................23
*United States v. Hansen,*
   2023 WL 4138994 (U.S. June 23) .......................................................... 3, 20
*United States v. Texas,*
   2023 WL 4139000 (U.S. June 23) ..............................................................19
*United States v. Virginia,*
   518 U.S. 515 (1996)........................................................................................9

*Warshak v. U.S.*,
532 F.3d 521 (6th Cir. 2008) ............................................................20
*Washington v. Glucksberg*,
521 U.S. 702 (1997).......................................................... 13, 14, 24
*Whalen v. Roe*,
429 U.S. 589 (1977)..........................................................................13
*Williams-Yulee v. Fla. Bar*,
575 U.S. 433 (2015)..........................................................................17
*Worley v. State*,
30 Tenn. 172 (1850)..........................................................................10

## Statutes

2023 Tenn. Pub. Acts, ch.1 (pre-filed Nov. 9, 2022) ..............................5
Tenn. Code Ann. §39-15-213 ...................................................................9
Tenn. Code Ann. §68-33-103 ............................................................ 5, 12
Tenn. Code Ann. §68-33-105 ...................................................................5
Tenn. Code Ann. §68-33-106 ...................................................................5
Tenn. Code Ann. §68-33-107 ...................................................................5

## Other

CHOICES, *Ban on Gender-Affirming Care for Trans Youth Blocked*
(June 29, 2023), https://yourchoices.org/blog/ban-on-gender-affirming-care-for-trans-youth-blocked/ ..........................................................................21
Sears, *Arresting Dress* (2013)................................................................10
Sutton, *51 Imperfect Solutions* (2018) ..................................................17

## EMERGENCY MOTION FOR STAY OF
## PRELIMINARY INJUNCTION PENDING APPEAL

This Court should stay the district court's preliminary injunction so that Tennessee can enforce all aspects of its law, scheduled to come into effect tomorrow.

Because delay risks subjecting children to the life-altering harms of cross-sex hormones and puberty blockers, Tennessee asks the Court to grant this motion **as soon as possible**. To that end, Tennessee proposes that Plaintiffs **file their response by 2 PM EST on July 3, with Tennessee's reply due by 6 PM EST that same day**. *Cf. Memphis Ctr. for Reproductive Health v. Slatery*, No. 20-5969, Doc.131 (6th Cir. June 24, 2022) (en banc) (setting similar schedule). The State also requests an administrative stay until the Court rules on this motion.

Tennessee informed Plaintiffs of this motion yesterday. They oppose it and the schedule.

1

**INTRODUCTION**

All over this country and in Tennessee, when children with mental-health disorders present with "gender dysphoria," providers routinely put them on a pharmaco-medical track leading to permanent harm. That track starts with drugs to forestall puberty, causing reduced bone density and delayed development. Ninety-eight percent of those children move on to cross-sex hormones (testosterone for girls, estrogen for boys). Especially for minors who have not completed puberty, cross-sex hormones cause permanent loss of reproductive function (sterilization) and a host of lifelong injuries. An alternative is to treat with psychotherapy and see if gender dysphoria desists, as it often does.

Comprehensive reviews in Sweden, the United Kingdom, Finland, and Norway concluded that these treatments should not be offered to minors outside of research settings. They all agree that the harms are significant, and the benefits are unproven. The American medical establishment, for its part, has largely been captured by activists. Yet all would agree there is debate about whether these treatments' benefits outweigh the risks.

The bipartisan Act that bans these treatments for minors becomes effective on July 1, 2023, with a grace period until March 31, 2024, for those already on them.

Plaintiffs are three minors currently on puberty blockers or cross-sex hormones along with a physician, Dr. Lacy, who treats children for gender

2

dysphoria. In a flagrantly wrong decision issued three days before the Act's effective date, the district court adopted virtually all of Plaintiffs' arguments and, defying this Court's precedents, enjoined Tennessee from enforcing the law against anyone—going so far as to call a case the Supreme Court cited last week a "dead-letter." Op., R.167, PageID#2722.

As with other district courts facing similar questions, activists persuaded the district court to second-guess the General Assembly's view of the scientific evidence, acting more like "the federal council of revision that the Framers rejected." *United States v. Hansen*, 2023 WL 4138994, at *14 (U.S. June 23) (Thomas, J., concurring). Who has the better of this scientific debate should be a question for Tennessee, not its Middle District.

The district court held that transgender persons are a quasi-suspect class even though this Court has said homosexuals are not. It defied substantive-due-process analysis by defining the contested right at too general a level of abstraction, as the Supreme Court warns against. And it concluded that a law treating both sexes equally is sex discriminatory—applying heightened scrutiny even after the Supreme Court held that States are free to restrict medical procedures affecting only one sex (abortion). Finally, the district court viewed evidentiary disputes about irreparable harm in a light most favorable to Plaintiffs, canceling the evidentiary hearing that Tennessee sought.

Tennessee should not have to wait while hundreds, if not thousands, of children are set upon the path to sterilization. Nor should it take months of briefing to see how wrong the district court's decision is. Each day this injunction persists, Tennessee's children, and thus Tennessee, will suffer irreparable harm. The Court should enter a stay.

## BACKGROUND

### I.    Statutory Background

In September 2022, the public learned the extent of Vanderbilt University Medical Center's ("Vanderbilt's") work with children at its gender clinic. Some Vanderbilt patients had "started gender-affirming hormones at 13 or 14" years-old. Ex.1-B to PI Resp., R.113-1, PageID#963 (video at 45:41-45:45). Vanderbilt also was performing "top surgery," *i.e.*, double mastectomy, on minors as young as 16. Ex.1-C, R.113-1, PageID#979. The founder and lead clinician of Vanderbilt's Transgender Health Clinic boasted that, despite Vanderbilt's non-profit status, "top surgeries" and "routine hormone treatment" would "make a lot of money." Ex.1-D, R.113-1, PageID#987 (video at at 0:11-0:47 (quoting Dr. Taylor)). A Vanderbilt administrator warned "conscientious" objectors that, "[i]f you don't want to do this kind of work, don't work at Vanderbilt." Ex.1-E, R.113-1, PageID#988 (video at 0:01-0:08, 1:10-1:14).

4

To "protect the health and welfare of minors" in Tennessee, state legislators introduced the Act, which passed with bipartisan support.  2023 Tenn. Pub. Acts, ch.1 (pre-filed Nov. 9, 2022).

The new law, which takes effect tomorrow, prohibits certain medical procedures "for the purpose of (A) [e]nabling a minor to identify with, or live as, a purported identity inconsistent with the minor's sex; or (B) [t]reating purported discomfort or distress from a discordance between the minor's sex and asserted identity."  Tenn. Code Ann. §68-33-103(a)(1).  The Act includes a grace period that allows minors currently receiving treatment—including the minor Plaintiffs in this case—to continue to do so until March 31, 2024.  *Id.* §68-33-103(b).

The Act allows minor patients and the Attorney General to sue healthcare providers who violate it.  *Id*. §§68-33-105, -106.  The Act further directs Tennessee's healthcare regulatory authorities to take disciplinary action against offending providers.  *Id*. §68-33-107.

## II.    **Procedural Background**

Plaintiffs are two 15-year-olds on cross-sex hormones, a 12-year-old on puberty blockers, their parents, and a Memphis physician who prescribes cross-sex hormones to patients over 16.  They sued Tennessee agencies and officials for declaratory and injunctive relief.  Complaint, R.1, PageID#1-43.  Plaintiffs moved for a statewide preliminary injunction to restrain the State from enforcing the new

5

law.  PI Mot., R.21, PageID#191-95; Mem., R.33, PageID#411-43.  Plaintiffs moved

only on their equal-protection and substantive-due-process claims.  *Id*.  They do not

challenge the Act's private right of action.  Op., R.167, PageID#2662.

The district court, just three days before the law's effective date, mostly

granted Plaintiffs' motion.  It preliminarily enjoined the State Defendants'

enforcement of the Act, excepting the surgery prohibition.    Op., R.167,

PageID#2656-724;  Order,  R.168,  PageID#2725-27.    Hours  later,  Tennessee

appealed and filed an emergency stay motion with the district court.  Notice of

Appeal, R.169, PageID#2728-32; Mot. for Stay, R.170, PageID#2733-42.  The

district court denied the stay today for reasons similar to why it granted the

injunction.  Order, R.172, PageID#2747-50.[1]

## STANDARD OF REVIEW

Stays pending appeal turn on four factors: likely success on appeal, irreparable

harm, the balance of equities, and the public interest.  *Priorities USA v. Nessel*, 978

F.3d 976, 982 (6th Cir. 2020); *Memphis Ctr.*, No. 20-5969, Doc.33-2 at 1-2 (6th Cir.

Nov. 20, 2020).  All four factors "'are not prerequisites that must be met, but are

interrelated considerations that must be balanced together.'"  *A. Philip Randolph*

---

[1] The United States intervened in support of Plaintiffs and also sought a statewide
preliminary injunction.  U.S. PI Mot., R.40, PageID#501-06.  The district court has
not ruled on Intervenor's preliminary injunction motion.

*Inst. v. Husted*, 907 F.3d 913, 918 (6th Cir. 2018). This Court conducts that balance "de novo." *Priorities USA*, 978 F.3d at 982.

Whether Tennessee will win this appeal depends on whether this Court will vacate the preliminary injunction. Though the entry of that injunction is reviewed for abuse of discretion, a district court "abuses its discretion" when it "relies on clearly erroneous findings of fact" or "improperly applies the law." *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995). And "in a case such as this, where 'the district court's decision was made on the basis of a paper record, without a[n] evidentiary hearing,'" this Court is in "as good a position as the district judge to determine the propriety of granting a preliminary injunction." *Id.*

## ARGUMENT

The balance of factors favors a stay here. *Dobbs v. Jackson Women's Health Organization* made clear that rational-basis review applies to medical regulations that do not invidiously discriminate against one sex or the other. 142 S.Ct. 2228, 2245-46 (2022). Tennessee's health-and-safety determinations are not "subject to courtroom fact-finding." *Bristol Reg'l Women's Ctr., P.C. v. Slatery*, 7 F.4th 478, 483-84 (6th Cir. 2021) (en banc). If they were, the Act clears any standard of review because of the robust scientific debate surrounding the safety and efficacy of the banned treatments. Independently, the statewide injunction was far beyond the

district court's authority.    Tennessee suffers irreparable harm every day the preliminary injunction enjoins it from enforcing its law and protecting children from lifelong harms.

## I.    Tennessee will likely succeed on appeal.

The district court's injunction was improper for several reasons—three of which Tennessee explains here.  The Act is lawful.  Statewide relief is not.  And Plaintiffs did not prove, despite material disputed facts, irreparable harm.

### A.    The Act is likely constitutional.

Tennessee is likely to succeed on appeal.  "States . . . are the traditional source of authority over safety, health, and public welfare."  *In re MCP No. 165*, 20 F.4th 264, 273 (6th Cir. 2021) (Sutton, J., dissental).  "Part and parcel" of this police power "is the power to regulate public health."  *Id. at* 287 (Bush, J., dissental).  Tennessee validly exercised that power.

#### 1.    The Act equally protects minors of both sexes.

The district court ruled that the Act discriminates based on sex, subjecting the Act to intermediate scrutiny, because (1) it "creates a sex-based classification on its face"; and (2) "discrimination based on transgender status necessarily constitutes discrimination on the basis of sex."   Op., R.167, PageID#2682, 2685. But sex discrimination under the Equal Protection Clause means "giv[ing] a mandatory preference to members of either sex over members of the other."  *Reed v. Reed*, 404

8

U.S. 71, 76 (1971); *accord United States v. Virginia*, 518 U.S. 515, 541-42 (1996). The Act's prohibitions apply equally to males and females to prohibit cross-sex hormones and puberty blockers, with no preference for one over the other.

A State's medical regulation "is not a sex-based classification and is thus not subject to the heightened scrutiny that applies to such classifications" by mentioning sex. *Dobbs*, 142 S.Ct. at 2245 (citing *Geduldig v. Aiello*, 417 U.S. 484, 496) (1974)). The district court tried to distinguish *Dobbs* by observing (wrongly) that "laws regulating pregnancy generally do not make explicit sex-based classifications." Op., R.167, PageID#2683. Abortion laws almost always mention sex. *Dobbs*, 142 S.Ct. at 2243 & n.14 (Miss. Code Ann. §41-41-191 calculates gestational age "from the first day of the last menstrual period of the pregnant woman"); Tenn. Code Ann. §39-15-213 (repeatedly using "woman" and "female"). That this Act applies to procedures *both* sexes can undergo puts it on even sounder footing.

The district court was also wrong to extend *Bostock v. Clayton County*'s Title VII reasoning to the Equal Protection Clause. *Bostock* expressly did "not prejudge" the meaning of other laws governing sex discrimination. 140 S.Ct. 1731, 1753 (2020). Heeding that warning, this Court has ruled "it does not follow that principles announced in the Title VII context automatically apply in the Title IX context." *Meriwether v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021). *Bostock* does not even apply to other antidiscrimination laws with the "because of" language central to

*Bostock*'s reasoning.  *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021).  *Bostock* is "limited only to Title VII itself."  *Id.*

The Equal Protection Clause uses different words and "predates Title VII by nearly a century, so there is reason to be skeptical that its protections reach so far." *Brandt v. Rutledge*, 2022 WL 16957734, at *1 n.1 (8th Cir. Nov. 16) (Stras, J., joined by Gruender, Erickson, Grasz, Kobes, JJ., dissental).  "Between 1848 and 1900," laws against cross-dressing "were a central component of urban life."  Sears, *Arresting Dress* 3-4 (2013).  And under common law, castrating a male was a felony. *See Adams v. Barrett*, 5 Ga. 404, 412-13 (1848).  Americans found castration so abhorrent that, despite embracing countless evil acts in promotion of slavery, slave States prohibited slaveowners from castrating their slaves.  *E.g.*, *Worley v. State*, 30 Tenn. 172, 175-76 (1850).  The original public meaning of the Fourteenth Amendment cannot possibly protect a constitutional right to take these drugs or give them to one's children.

### 2.    Transgender individuals are not a quasi-suspect class.

This Court has held gay persons are not a quasi-suspect class because, unlike "race or biological gender," sexual orientation is not "definitively ascertainable at the moment of birth." *Ondo v. City of Cleveland*, 795 F.3d 597, 609 (6th Cir. 2015). Same if not more so for transgender status.  Laidlaw Decl.¶¶16-18, R.113-7,

PageID#1549.  Because transgender status is not a quasi-suspect class, rational-basis review applies.

The district court "querie[d] whether the Sixth Circuit's reasoning in *Ondo* rests on solid grounds" and rejected it in a footnote.  Op., R.167, PageID#2521. Charitably, the district court got ahead of itself in implicitly overruling *Ondo*.  Even if *Ondo* weren't binding, Plaintiffs completely failed to engage with the other requirements for a quasi-suspect class.  *Cf. City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442-47 (1985).  On a record even the district court acknowledged was "not fulsome," it simply borrowed the rulings of district-court opinions to find transgender individuals have historically been subject to discrimination.  Op., R.167, PageID#2679.  The district court then ruled that transgender individuals can equally contribute to society, defining the class at a higher level of generality than individuals suffering from gender dysphoria.  *Id.* PageID#2686.  Finally, the district court ruled transgender individuals lack political power even if they have "a substantial voice in the media, substantial support in the non-profit and public-interest sector, and the support of a substantial number of elected representatives or executive-branch officials."  *Id.* PageID#2680.  They even have the full resources of the U.S. government, who intervened in Plaintiffs' favor.

The district court erred again by ruling the Act discriminates based on transgender status.  *Id.* PageID#2686.  Everyone agrees not all transgender

11

individuals use puberty blockers or cross-sex hormones "to identify with, or live as, a purported identity inconsistent with [their] sex" or to "[t]reat[] purported discomfort or distress from a discordance between" sex and identity.  Tenn. Code Ann. §68-33-103(a)(1).  Transgender minors are in "both" the group of individuals not receiving such treatments and the group receiving such treatments.  *Adams v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 809 (11th Cir. 2022) (en banc).  Non-transgender individuals also receive the treatments, as was obvious to the legislature in separately prohibiting such treatment for gender dysphoria even when it is *not* "to identify with, or live as, a purported identity inconsistent with the minor's sex." Tenn. Code Ann. §68-33-103(a)(1).  Accordingly, there is a "lack of identity" between transgender status and the prohibited treatments.  *Geduldig*, 417 U.S. at 496 n.20; *see id.* (though everyone pregnant is a woman, "members of both sexes" are in the nonpregnant group).

### 3.    Parents lack a fundamental right to subject their children to such harmful procedures.

The district court subjected the Act to strict scrutiny because it "infringes on a parent's" supposed "fundamental right to direct the medical care of that parent's child."  Op., R.167, PageID#2670.  *Dobbs* should have laid to rest the idea that parents can do whatever they want to their children.  Rational-basis review—"the same standard of review as other health and safety measures"—applies when the State regulates doctors from taking affirmative acts against children, born or unborn,

12

at their parents' request. *Dobbs*, 142 S.Ct. at 2244-46. Even under *Roe*, this Court upheld anti-eugenic laws designed to stop physicians from performing abortions for prohibited purposes. *E.g.*, *Preterm-Cleveland v. McCloud*, 994 F.3d 512 (6th Cir. 2021) (en banc).

The district court ignored this Court's instruction that, to "validly assert a substantive due process claim, a petitioner must provide a 'careful description' of the claimed liberty interest." *Clark v. Jackson*, 2023 WL 2787325, at *5 (6th Cir. Apr. 5). That right "must be 'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty.'" *Dobbs*, 142 S.Ct. at 2242 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). Parents of course decide their children's treatment when laws do not say otherwise. But that "does not mean that parents' control over their children is without limit." *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396 419 (6th Cir. 2019). Their "claim is derivative from, and therefore no stronger than," the child's right to treatment. *Whalen v. Roe*, 429 U.S. 589, 604 (1977).

Yet Plaintiffs made no effort to prove a fundamental right to *these* treatments existed in 1868 when the Fourteenth Amendment was ratified. They conceded there is, at best, "nearly two decades of research" supporting them. Mem., R.33, PageID#433.

13

Plaintiffs therefore fudged the *Glucksberg* test and defined the contested right "at a high level of generality," exactly as the Supreme Court says not to. *Dobbs*, 142 S.Ct. at 2258. Cases like *Kanuszewski* asked whether parents could *refuse* the drawing and long-term storage of their children's blood. 927 F.3d at 408, 418-20. *Glucksberg* rejected the idea that "the right to refuse unwanted medical treatment could be some-how transmuted into a right to" get a specific treatment. 521 U.S. at 725-26. That at least one parent consents makes no difference.

### 4.    The scientific debate shows that the Act survives any level of scrutiny.

The Act survives constitutional muster even under the strictest scrutiny. Tennessee submitted thorough declarations from experts in the fields of endocrinology, psychiatry, and clinical psychology explaining the harms associated with the prohibited treatments and the lack of quality evidence regarding their long-term safety and efficacy. Expert Decls., R.113-3–113-8, PageID#1089-1733. Tennessee also produced testimony from detransitioners lamenting physical and psychological consequences of the treatments; parents voicing concern over healthcare providers pressuring them to approve such treatment; and a whistleblower revealing that pediatric clinics often fail to follow "standards of care" endorsed by American medical-interest groups. Decls., R.113-11–113-20, PageID#2031-91.

The district court second-guessed the legislature's judgments. On a paper record, it discounted several of Tennessee's experts. A professor in the Division of

14

Pediatric Endocrinology and Diabetes at Washington University School of Medicine (Dr. Hruz) and a clinical psychologist and neuroscientist (Dr. Cantor) were "minimally persuasive" because they shy away from treating minors' gender dysphoria, a field dominated by the very medical establishment they testified against. Op., R.167, PageID#2690-91. The district court then cast aside declarations of the doctor who chaired the 1998 WPATH Standards committee (Dr. Levine) and another board-certified endocrinologist (Dr. Laidlaw) because they have not "administered the medical procedures banned by" the Act. *Id.* PageID#2691. Respectfully, that ruling is nonsensical. It's like saying the only doctors who can opine on a law prohibiting partial-birth abortions are those without qualms about performing them.

The district court ignored how Vanderbilt doctors describe the flaws of their own practice. The founder of Vanderbilt's Transgender Health Clinic admitted they "have very, very little data to guide our treatment." Ex.1-G, R.113-1, PageID#1048 (video at 37:29-37:32). "We haven't been doing this particularly long enough to know the long-term effects of hormone replacement therapy, and this is particularly true in our pediatric population." *Id.* 38:08-38:20. She "had no fellowship training in this. Everything I have learned, I have learned from my patients, and I've learned from the Internet." *Id.* 44:30-44:36. In a "primer" on transgender medicine, Dr. Taylor explained there is "[n]o real consensus" about estradiol levels for boys

identifying as girls.  Ex.1-F, R.113-1, PageID#1029.  Her own practice is "still figuring it out!"  *Id.*

Nor did the district court acknowledge the admitted shortcomings of the 2017 Endocrine Society Guidelines and September 2022 WPATH Standards.  "The Endocrine Society makes no warranty, express or implied, regarding the guidelines and specifically excludes any warranties of merchantability and fitness for a particular use or purpose," "nor do they establish a standard of care."  ES Guidelines, R.113-10, PageID#2022.  The document does state, however, that puberty blockers likely lead to "suboptimal bone mineral accrual" and "compromised fertility if the person subsequently is treated with sex hormones."  *Id.* PageID#2009.

WPATH now describes itself as an "advocacy organization[]."  *Boe v. Marshall*, No. 2:22-cv-184-LCB, Doc.208, at 3 (M.D. Ala. Dec. 27, 2022).  WPATH also admits it has "limited data" on the safety of hormonal treatment and most surgeries for minors and, as a result, opts not to set *any* minimum age for treatments other than phalloplasty.  WPATH Standards, R.113-9, PageID#1801.  *Contra* Op., R.1, PageID#2664.  Plaintiffs' experts fail to cover up the documents' shortcomings.

The district court ignored declarations of a board-certified psychiatrist (Dr. Nangia) and a Swedish child-and-adolescent psychiatrist (Dr. Román).  The lower court simply failed to consider Dr. Nangia's declaration explaining how, due to minors' lack of maturation, most of them cannot comprehend and appreciate long-

term risks of medical transition or the low-quality data underlying WPATH and Endocrine Society documents.  Nangia Decl.¶154, R.113-8, PageID#1709.  Also missing is any answer to Dr. Román's explanation of how European doctors, who previously treated minors with puberty blockers and cross-sex hormones, now deeply disagree with the American medical establishment and have taken steps that "resulted in essentially a ban on puberty blockers, cross-sex hormones, and surgeries in children" with gender dysphoria.  Román Decl.¶¶2, 14-21, 33-38, R.113-6, PageID#1517-31.

Even strict scrutiny is not "fatal in fact."  *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015).  The science is, at a bare minimum, unclear.  The Constitution does not require Tennessee to sit back and let doctors conduct risky, sterilizing experimental medicine on children.  Members of this Court have long lamented federal courts' approval of eugenic sterilization in the early 1900s, which the American medical establishment enthusiastically supported.  *Preterm-Cleveland*, 994 F.3d at 538-40 (Griffin, J., concurring) (citing Sutton, *51 Imperfect Solutions* 84-132 (2018)).  Tennessee need not repeat the mistakes of the past.

## B.    The district court could not enjoin enforcement statewide.

Though the district court found only three minor Plaintiffs (and apparently their parents) have standing, it enjoined the State defendants' enforcement of the Act as to everyone in the State. Throughout its opinion, the district court relied on *Doe*

*v. Ladapo*, a decision so extreme it equated Florida with "Iran or other similarly repressive regimes." 2023 WL 3833848, at *14 (N.D. Fla. June 6). (Ironically, Iran is a hub for sex-reassignment surgery. Resp. to Supplemental Authority, R.156, PageID#2603-04.) Yet even *Ladapo* granted a preliminary injunction limited to the three minor plaintiffs, their parents, and their healthcare providers. *Id.* at *17. The district court here disagreed because "it is far-fetched that healthcare providers in Tennessee would continue care specifically for Minor Plaintiffs when they cannot do so for any other individual" and because the Act "is most likely unconstitutional on its face." Op., R.167, PageID#2719. The court forgot adults still receive treatment.

A statewide injunction is not "necessary" here. Plaintiffs submitted no evidence that providers will not treat Plaintiffs unless they can also treat all other minors. Such a theory rests on the district court's "pure speculation" about the economics of medicine and neglects that the minor Plaintiffs' physician still works at Vanderbilt treating adults. *Kentucky v. Biden*, 57 F.4th 545, 557 (6th Cir. 2023). Even by the district court's logic, the preliminary injunction was unnecessary for every other provider in the state not treating the minor patient. The preliminary injunction is "more burdensome to" Tennessee "than necessary to provide complete relief to the plaintiffs." *Id.*

18

That Plaintiffs brought a "facial" challenge to the Act changes nothing. Plaintiffs are not entitled to a statewide injunction if they succeed on a facial challenge; the district court should have rejected their facial challenge if as-applied relief would redress their injuries. *See Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 570-71 (6th Cir. 2012).

Nor can labeling something a facial challenge bypass the rule that courts' remedial powers are limited to the parties before them. Under our Constitution, a valid remedy "operate[s] with respect to specific parties," not on a law "in the abstract." *California v. Texas*, 141 S.Ct. 2104, 2115 (2021). So when a district court "order[s] the government" to "refrain from acting toward nonparties," it exceeds "the judicial power." *Arizona v. Biden*, 31 F.4th 469, 483-84 (6th Cir. 2022) (Sutton, J., concurring). "After all, the 'judicial Power' is the power to 'decide cases for parties, not questions for everyone.'" *United States v. Texas*, 2023 WL 4139000, at *12 (U.S. June 23) (Gorsuch, J., concurring). District courts err when they craft injunctions that "circumvent rules governing class-wide relief." *Id.* at *13; *see Kentucky v. Yellen*, 54 F.4th 325, 341 & n.12 (6th Cir. 2022) (To "obtain injunctive relief, Kentucky and Tennessee each had to demonstrate, with evidence, why it was suffering *particularized* continuing or imminent injuries in fact.").

In all events, the Act is not facially unconstitutional. As Tennessee argued below, the Act has many lawful applications. Even if it failed intermediate scrutiny

as applied to Plaintiffs, it could survive when applied to: healthcare providers who treat minors without meeting the medical guidelines Plaintiffs cite, minors under the age of 12, minors with a parent who does not consent, minors with unfit parents, minors with severe mental disabilities, minors in state custody, and more.  The Act does, in fact, lawfully apply to these applications.

The district court never denied that these applications would be constitutional. It claimed any lawful applications were irrelevant because *Salerno*'s famous test for facial challenges—that "'no set of circumstances exists under which' the [statute] would be valid"—is now "a dead-letter."   Op., R.167, PageID#2720-22. Astonishing.  The Supreme Court reaffirmed just last week that "litigants mounting a facial challenge to a statute normally 'must establish that *no set of circumstances* exists under which the [statute] would be valid'"—meaning a statute cannot be "facially unconstitutional" when it has "lawful applications."  *Hansen*, 2023 WL 4138994, at *5 (majority op.) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).  *Salerno* remains a limit on district courts' ability to grant relief beyond the parties.  *Warshak v. United States*, 532 F.3d 521, 529-31 (6th Cir. 2008).

## C.   Plaintiffs did not prove that a preliminary injunction was necessary to prevent their alleged harms.

Plaintiffs also failed to prove irreparable harm. Their theory is that the Act will cause Vanderbilt to quickly end their current treatments.  But to get interim relief, Plaintiffs needed to prove causation—*i.e.*, that a preliminary injunction would

20

cause Vanderbilt to continue their treatments. *Ohio v. Yellen*, 539 F. Supp. 3d 802, 821 (S.D. Ohio 2021). They failed. And the district court erred by denying Tennessee an evidentiary hearing on this question. These errors mean Tennessee is likely to succeed on appeal because either is sufficient, on its own, to reverse the preliminary injunction.

It is at least unproven that a preliminary injunction will cause Vanderbilt, a nonparty, to continue Plaintiffs' treatments.[2] For example, Vanderbilt might understand that a preliminary injunction is preliminary; it can be stayed, lifted after trial, or reversed on appeal. If that occurs, then (as Tennessee correctly explained below) Tennessee could enforce the Act for treatments provided while the preliminary injunction was in place. *Edgar v. MITE Corp.*, 457 U.S. 624, 651-53 (1982) (Stevens, J., concurring in part and concurring in judgment). And Vanderbilt might decide that the cost or hassle of reinitiating treatment is not worth it as the plaintiffs have already begun obtaining treatment elsewhere.

Nor did Plaintiffs bridge this gap with evidence. While the district court relied on a Vanderbilt administrator's declaration, the administrator discussed what Vanderbilt would do if "enforcement of the Act's provisions prohibiting Hormone

---

[2] Whatever Vanderbilt does, at least one clinic in Tennessee has announced it will continue to provide these treatments while the injunction is in place, establishing that the State is irreparably harmed. *See* CHOICES, *Ban on Gender-Affirming Care for Trans Youth Blocked* (June 29, 2023), https://yourchoices.org/blog/ban-on-gender-affirming-care-for-trans-youth-blocked/.

Therapy" were enjoined.  Pinson Decl.¶9, R.113-1, PageID#1067.  But the Act's provisions were not all enjoined: The private right of action remains enforceable in state court, where federal courts' opinions are not binding.  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 66 n.21 (1997).  The district court also ignored the treating physician's declaration admitting she will not treat Plaintiffs because "many are already seeking care out of state" and because she fears "punitive consequences" from "non-medical third parties."  Brady Decl.¶9, R.113-1, PageID#1070-71.  Those facts will not change under the preliminary injunction because §105 is not enjoined.

The district court further erred by denying an evidentiary hearing.  In this circuit, an evidentiary hearing is "required when there are disputed factual issues." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir. 2007).  District courts cannot grant a preliminary injunction based solely on the "'written evidence'" unless "'receiving further evidence would be manifestly pointless.'"  *Farnsworth v. Nationstar Mortg., LLC*, 569 F. App'x 421, 427 (6th Cir. 2014) (quoting Wright & Miller).  That tough standard is not met when, for example, material factual disputes turn on "'credibility determinations.'" *Certified Restoration*, 511 F.3d at 553 (quotation omitted).

Tennessee repeatedly requested an evidentiary hearing.  *See* Opp., R.112, PageID#948;  Transcript, R.125, PageID#2243-44, 2248.   It subpoenaed Vanderbilt's witnesses to come and testify.  And the district court initially agreed to

set an evidentiary hearing on whether Plaintiffs are receiving treatment elsewhere and whether "relevant treatment would or would not be available for Plaintiffs at Vanderbilt University Medical Center during the pendency of a preliminary injunction." Order, R.122, PageID#2206. But it later cancelled that hearing with no explanation. Order, R.148, PageID#2534. Far from "manifestly pointless," *Farnsworth*, 569 F. App'x at 427, an evidentiary hearing would have let Tennessee test Vanderbilt's credibility and explore obvious gaps and contradictions in its employees' ambiguous declarations.

## II.    Tennessee will suffer irreparable harm without a stay.

The preliminary injunction irreparably harms Tennessee by preventing it "from effectuating statutes enacted by representatives of its people." *Thompson v. DeWine*, 976 F.3d 610, 619 (6th Cir. 2020); *see Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S.Ct. 1002, 1011 (2022). And it prevents Tennessee from protecting its children from medical harms, starting July 1.

## III.    Tennessee wins the balance of equities and public interest.

Each day this Court allows the preliminary injunction to remain in place is another day the well-being of Tennessee children is at risk. Because the majority of children who exhibit gender dysphoria will naturally desist by adulthood, (Hruz Decl., R.113-4, PageID#1305-07; Levine Decl., R.113-5, PageID#1430-41), and because most minors cannot comprehend the long-term risks of medical transition,

23

(Nangia Decl., R.113-8, PageID#1709), Tennessee has an "unquestionably important" interest in enforcing the Act to protect children, including the minor Plaintiffs. *Glucksberg*, 521 U.S. at 732, 735.

At a minimum, the equities favor a stay to the extent the preliminary injunction extends beyond Plaintiffs (and their providers). That aspect of the district court's decision is completely indefensible and causes the most harm to the State. And Plaintiffs submitted no specific evidence about individuals other than themselves—individuals who have not come forward and filed lawsuits. Tennessee, meanwhile, submitted substantial evidence from detransitioners who have come to regret their decision to undergo these treatments and parents concerned about being pressured into consenting. Minors and parents like them deserve protection while this appeal is pending.

## CONCLUSION

Defendants respectfully request that this Court stay the preliminary injunction as soon as possible, including an immediate administrative stay.

Respectfully submitted,

JONATHAN SKRMETTI
  Attorney General & Reporter

/s/ *Clark L. Hildabrand*
CLARK L. HILDABRAND
  Senior Counsel

STEVEN J. GRIFFIN
RYAN N. HENRY
BROOKE A. HUPPENTHAL
  Assistant Attorneys General
OFFICE OF THE TENNESSEE ATTORNEY
GENERAL & REPORTER
P.O. Box 20207
Nashville, Tennessee 37202
(615) 253-5642
clark.hildabrand@ag.tn.gov

ADAM K. MORTARA
LAWFAIR LLC
40 Burton Hills Blvd., Suite 200
Nashville, TN 37215
(773) 750-7154
mortara@lawfairllc.com

CAMERON T. NORRIS
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com

June 30, 2023

# CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d) because it contains 5,199 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface and type style requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in proportionally spaced typeface using Times New Roman 14-point font.

/s/ *Clark L. Hildabrand*
CLARK L. HILDABRAND
 Senior Counsel

June 30, 2023

## CERTIFICATE OF SERVICE

I, Clark L. Hildabrand, counsel for Defendants-Appellants and a member of the Bar of this Court, certify that, on June 30, 2023, a copy of the Emergency Motion for Stay of Preliminary Injunction Pending Appeal was filed electronically through the appellate CM/ECF system.  I further certify that all parties required to be served have been served.

/s/ *Clark L. Hildabrand*
CLARK L. HILDABRAND
 Senior Counsel