No. 23-5600

# In the United States Court of Appeals for the Sixth Circuit

---

L.W., by and through her parents and next friends, Samantha Williams and Brian Williams; Samantha Williams; Brian Williams; John Doe, by and through his parents and next friends, Jane Doe and James Doe; Jane Doe; James Doe; Rebecca Roe; Susan N. Lacy, on behalf of herself and her patients; Ryan Roe, by and through his parent and next friend, Rebecca Roe,

*Plaintiffs-Appellees*,

United States Of America,

*Intervenor-Appellee*,

v.

Jonathan Thomas Skrmetti, in his official capacity as the Tennessee Attorney General and Reporter, et al.,

*Defendants-Appellants*.

---

On Appeal from the United States District Court
for the Middle District of Tennessee, Nashville Division
Case No. 3:23-cv-00376

---

**BRIEF OF AMICUS CURIAE AMERICA FIRST LEGAL IN SUPPORT OF APPELLANTS' MOTION FOR STAY**

---

Gene P. Hamilton
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940
jonathan@mitchell.law

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

Table of contents ................................................................................................ i

Table of authorities .............................................................................................. ii

Interest of amicus curiae ..................................................................................... iv

    I.    A preliminary injunction cannot be granted unless the movant makes a "clear showing" that it is entitled to this relief ....................... 1

        A.    The plaintiffs failed to make a "clear showing" of Article III standing ........................................................................... 2

        B.    The plaintiffs failed to make a "clear showing" that SB 1 violates the Fourteenth Amendment ......................................... 5

    II.    The district court's decision to award statewide relief is indefensible ........................................................................................ 7

Conclusion ........................................................................................................ 11

Certificate of compliance .................................................................................. 12

Certificate of service ......................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Califano* v. *Yamasaki*, 442 U. S. 682 (1979) ............................................................. 10

*Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975) ............................................................ 7

*Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*,
   958 F.3d 532 (6th Cir. 2020) ................................................................................ 2

*Ex Parte Young*, 209 U.S. 123 (1908) ........................................................................ 1

*Fowler v. Benson*, 924 F.3d 247 (6th Cir. 2019) ........................................................ 2

*Kanuszewski v. Michigan Dep't of Health & Human Services*,
   927 F.3d 396 (6th Cir. 2019) ................................................................................ 6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................. 2

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) .............................................................. 1

*Michael H. v. Gerald D.*, 491 U.S. 110 (1989) ............................................................ 6

*Ondo v. City of Cleveland*, 795 F.3d 597 (6th Cir. 2015) .......................................... 7

*Overstreet v. Lexington-Fayette Urban County Gov't*,
   305 F.3d 566 (6th Cir. 2002) ............................................................................ 1, 2

*Service Employees International Union Local 1 v. Husted*,
   698 F.3d 341 (6th Cir. 2012) ................................................................................ 1

*Southern Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*,
   860 F.3d 844 (6th Cir. 2017) ................................................................................ 1

*Speet v. Schuette*, 726 F.3d 867 (6th Cir. 2013) ........................................................ 10

*Students for Fair Admissions v. President and Fellows of Harvard College*,
   --- S. Ct. ----, 2023 WL 4239254 ........................................................................... 7

*Trump v. Hawaii*, 138 S. Ct. 2392 (2018) .................................................................... 5

*United States v. National Treasury Employees Union*, 513 U.S. 454 (1995) .......... 10

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ........................................................ 6

*Whole Woman's Health v. Jackson*, 141 S. Ct. 2494 (2021) ................................ 1, 10

*Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021) ................................ 3, 4, 9

*Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008) ................................... 1

**Statutes**

Tenn. Code Ann. § 68-33-105 ................................................................................... 3

**Other Authorities**

Jack M. Balkin, *Abortion and Original Meaning*,
    24 Const. Comment. 291 (2007) ........................................................................ 6

# INTEREST OF AMICUS CURIAE

Amicus curiae America First Legal Foundation is a nonprofit organization dedicated to promoting the rule of law in the United States and defending individual rights guaranteed under the Constitution and federal statutes. America First Legal has a substantial interest in this case because it firmly believes, as part of its mission to encourage understanding of the law and individual rights guaranteed under the Constitution of the United States, that a proper understanding of those rights must be informed by reference to their text, and any other rights not expressly mentioned must be deeply rooted in this nation's history and tradition. And further, America First Legal believes that a proper understanding of the law in the United States must include a coherent, consistent understanding of the role of federal courts to decide cases or controversies presented to them.

All parties have consented to the filing of this brief. No counsel for a party authored any part of this brief. And no one other than the amicus curiae, its members, or its counsel financed the preparation or submission of this brief.

The state's motion explains the many errors in the district court's opinion and the urgent need for a stay pending appeal. Yet there are even more reasons for this Court to stay the preliminary injunction.

## I. A Preliminary Injunction Cannot Be Granted Unless The Movant Makes A "Clear Showing" That It Is Entitled To This Relief

Start with the district court's disregard of the standard for granting a preliminary injunction. Both the Supreme Court and this Court have repeatedly held that a preliminary injunction is an "'extraordinary'" remedy, which cannot issue "'unless the movant, *by a clear showing,* carries the burden of persuasion.'" *Mazurek v. Armstrong*, 520 U.S. 968, 971, 972 (1997) (emphasis in original) (citation omitted); *see also Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008) (similar); *Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) (applicant for a preliminary injunction must make a "'strong showing'" that it satisfies all four requirements) (citation omitted); *Ex parte Young*, 209 U.S. 123, 166 (1908) ("[N]o injunction ought to be granted unless in a case reasonably free from doubt."); *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (holding that a preliminary injunction "should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it."); *SEIU Local 1 v. Husted*, 698 F.3d 341, 344 (6th Cir. 2012) (similar); *Southern Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("'A preliminary injunction' . . . should 'only be awarded

upon a clear showing that the plaintiff is entitled to such relief'" (citations omitted)); *Fowler v. Benson*, 924 F.3d 247, 256 (6th Cir. 2019) (similar); *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 539 (6th Cir. 2020) (similar).

The district court acknowledged at the outset of its opinion that the plaintiffs must prove that the circumstances "clearly demand" a preliminary injunction. Op., R.167, PageID#2660 (quoting *Overstreet*, 305 F.3d at 573). Yet it went ahead and awarded a preliminary injunction even though the plaintiffs fell far short of a "clear showing" of Article III standing, and even though their constitutional claims rest on a novel and debatable application of the Supreme Court's Fourteenth Amendment doctrines.

### A. The Plaintiffs Failed To Make A "Clear Showing" Of Article III Standing

The plaintiffs failed to make a "clear showing" that the requested relief will redress their Article III injuries. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" (citation omitted)).

There is no evidence or reason to believe that an injunction against the state defendants will cause providers in Tennessee to continue offering the services outlawed by SB 1. SB 1 not only subjects non-compliant providers to penalties imposed by the attorney general and state licensing authorities, it also creates a private right of action that allows any minor (or parents of a

minor) harmed by the forbidden treatments to sue for damages. *See id*. SB 1 also establishes an extraordinarily long period of limitations, allowing private lawsuits to be brought within 30 years after the minor reaches 18 years of age or 10 years after the minor's death. *See* Tenn. Code Ann. § 68-33-105. The plaintiffs did not (and cannot) request an injunction against the enforcement of this private cause of action because none of the defendants have any role in enforcing it. *See Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021). So the plaintiffs (and the district court) must show that an injunction limited to the named defendants will cause Vanderbilt University Medical Center (VUMC) or other providers in Tennessee to continue offering the services outlawed by SB 1—even though the requested relief does nothing to remove the threat of ruinous civil liability imposed by section 68-33-105.

The plaintiffs failed to make a "clear showing" that VUMC or any other provider will violate SB 1 and expose themselves to private civil lawsuits if the state defendants are enjoined. The only piece of evidence that the plaintiffs submitted on this issue was a carefully hedged declaration from C. Wright Pinson, which does more to undermine than support their case. *See* Pinson Decl., R.113-1, PageID#1065–1067. Paragraph 7 of Pinson's declaration says that Vanderbilt University Medical Center will not offer *any* hormone therapy to minors after SB 1 takes effect, even under the continuing-care exception:

> After the Act was signed into law, VUMC reviewed the Act and determined that on and after the Effective Date it could no

longer offer any Hormone Therapy to minor patients. VUMC has communicated this determination to its patients through communications distributed through various media . . .

Pinson Decl. ¶ 7, R.113-1, PageID#1066. But then Pinson tacks on this cryptic passage in paragraph 9:

> Should enforcement of the Act's provisions prohibiting Hormone Therapy be deferred, delayed or enjoined, VUMC would continue to provide Hormone Therapy consistent with prevailing standards of care for persons with gender dysphoria to those minor patients of VUMC for whom such care is clinically appropriate, given the assessment of the patient's condition.

Pinson Decl. ¶ 9, R.113-1, PageID#1067. The condition described in paragraph 9—a ruling that enjoins "enforcement of the Act's provisions prohibiting Hormone Therapy"—is unclear on whether VUMC needs a ruling that enjoins enforcement only by the named defendants, or whether it needs a ruling that also enjoins enforcement by nonparty litigants under section 68-33-105.

The most natural reading of Pinson's declaration is that Vanderbilt needs an injunction that blocks enforcement of SB 1's provisions by *everyone* before it will provide hormone therapy. But that relief is unattainable,[1] and the plaintiffs are not requesting it. The redressability inquiry, however, turns on whether the *requested* relief will cause providers in Tennessee to provide hormone therapy despite the ongoing threat of private civil liability. Pinson's declaration is coy (perhaps deliberately so) on this question, and the plaintiffs

---

1. *See Whole Woman's Health II*, 142 S. Ct. at 535 ("[N]o court may 'lawfully enjoin the world at large'" (citation omitted)).

4

failed to provide any evidence that any other provider in Tennessee will provide hormone therapy and risk private lawsuits if the state defendants are enjoined. So the plaintiffs failed to make a "clear showing" of redressability, and the preliminary injunction should be stayed and reversed for that reason alone. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2423 (2018).

### B. The Plaintiffs Failed To Make A "Clear Showing" That SB 1 Violates The Fourteenth Amendment

The "clear showing" requirement also precludes a preliminary injunction when the plaintiffs' Fourteenth Amendment claims require recognition of a new "quasi-suspect class" that has never before been recognized by the Supreme Court or the Sixth Circuit, a recently minted theory of "sex" discrimination that leads to absurdities when taken to its logical conclusion, and a novel "substantive due process" right to subject one's children to dangerous and experimental medical treatments that lead to permanent sterilization and sexual dysfunction. Whatever one may think about the district court's analysis of the equal-protection and substantive-due-process issues, its conclusions are (at best) debatable. That forecloses the plaintiffs from obtaining a preliminary injunction, which can issue only upon a "clear showing" of likely success on the merits.

Start with the district court's substantive-due-process holding. The issue is not, as the district court claimed, whether parents have a "fundamental right to direct the medical care of his or her child";[2] it is whether parents

---

2. Op., R.167, PageID#2666.

5

have a "fundamental right" to subject their children to the specific treatments outlawed by SB 1. *See Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) ("[W]e have required in substantive-due-process cases a 'careful description' of the asserted fundamental liberty interest."). The district court defied *Glucksberg* by defining the asserted substantive-due-process right at an unacceptably high level of abstraction,[3] a maneuver that allows any historically disapproved practice to be characterized as a "fundamental right" by folding it into a vague and generalized principle. *See Michael H. v. Gerald D.*, 491 U.S. 110, 127 n.6 (1989) (plurality opinion); Jack M. Balkin, *Abortion and Original Meaning*, 24 Const. Comment. 291 (2007). The district court thought it could disregard *Glucksberg*'s instruction because a decision of *this* Court—issued 22 years after *Glucksberg*—recognized an abstract substantive-due-process rights of parents "to make decisions concerning the medical care of their children," without mentioning or acknowledging *Glucksberg*'s "careful description" requirement. *See Kanuszewski v. Michigan Dep't of Health & Human Services*, 927 F.3d 396, 418 (6th Cir. 2019) ("Parents possess a fundamental right to make decisions concerning the medical care of their children."); Op., R.167, PageID#2666–2669 (citing *Kanuszewski*). But elevating a circuit-court opinion over a pronouncement of the Supreme Court does not establish a "clear showing" that SB 1 violates the Due Process Clause.

---

3. Op., R.167, PageID#2666–2669.

On equal protection, the district court did not attempt to argue that the plaintiffs had made a "clear showing" that transgender individuals qualify as a "quasi-suspect class," and it cannot make such a claim when this Court has held that homosexuals are *not* a suspect class. *See Ondo v. City of Cleveland*, 795 F.3d 597, 609 (6th Cir. 2015). And the district court's attempt to import the holding of *Bostock* into the Equal Protection Clause must confront the fact that Title VII and the Equal Protection Clause are worded differently, and the author of *Bostock* has declared that any attempt to equate the anti-discrimination commands of the Equal Protection Clause with those in federal civil-rights statutes is "implausible on its face." *See Students for Fair Admissions v. President and Fellows of Harvard College*, --- S. Ct. ----, 2023 WL 4239254, *59 (Gorsuch, J., concurring).

## II. The District Court's Decision To Award Statewide Relief Is Indefensible

The most jarring part of the district court's opinion is its decision to extend relief beyond the named plaintiffs and enjoin the defendants from enforcing SB 1 against anyone. Op., R.167, PageID#2719–2722. This lawsuit was not brought as a class action, and the plaintiffs lack Article III standing to assert the rights of nonparties. The district court was therefore obligated to limit its remedy to the named plaintiffs and the providers who treat them. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("[N]either declaratory nor injunctive relief can directly interfere with enforcement of contested

7

statutes or ordinances except with respect to the particular federal plaintiffs, and the State is free to prosecute others who may violate the statute.").

The district court offered two reasons for disregarding these limits on the judicial power, but neither of them holds water. It first claimed that "a statewide injunction of SB1 is necessary to redress Plaintiffs' injuries . . . because it is far-fetched that healthcare providers in Tennessee would continue care specifically for Minor Plaintiffs when they cannot do so for any other individual to whom SB1 applies." Op., R.167, PageID#2719. But the district court cited no evidence to support this claim—and the plaintiffs did not provide any. All that the district court cited was a bald assertion in the plaintiffs' reply brief that says: "Permitting a provider such as VUMC to treat three patients out of hundreds to whom it previously offered care is hardly a guarantee such treatment will resume." Pls.' Reply Br., R.146, PageID#2528. That won't cut it. As the state points out, adults also receive hormone therapy from VUMC. *See* Mot. for Stay, ECF No. 8-1, at 18 ("The court forgot adults still receive treatment."). But more importantly, the burden is on the plaintiffs to make a "clear showing" that statewide relief is necessary to redress their injuries. *See* section I, *supra*. An ipse dixit is the antithesis of a clear showing, and the plaintiffs needed to produce declarations from VUMC personnel showing that they would provide hormone therapy to the plaintiffs only if statewide relief were granted.

The district court's second reason for flouting *Doran* is even more off base: It claimed it could award statewide relief and convert this lawsuit into a

8

de facto class action because "SB1 is most likely unconstitutional on its face." Op., R.167, PageID#2719–2722. But the district court had no jurisdiction to pronounce SB 1 "unconstitutional on its face" because it admits that the plaintiffs lack standing to litigate SB 1's ban on transgender surgeries,[4] and the plaintiffs are not challenging and cannot challenge SB 1's private cause of action in this pre-enforcement lawsuit. *See Whole Woman's Health II*, 142 S. Ct. at 532. The district court severed SB 1's transgender-surgery ban and private cause of action and excluded them from the scope of its ruling;[5] it cannot turn around after doing this and declare that "SB 1 is likely unconstitutional in all of its applications." Op., R.167, PageID#2722.

It is also a non sequitur to claim that a court can issue a universal remedy that protects non-parties to the litigation whenever it thinks a statute is "unconstitutional on its face." Op., R.167, PageID#2719. The holding of *Doran* applies regardless of whether a statute is unconstitutional "on its face" or only with respect to some of its provisions or applications. And a plaintiff's entitlement to a universal or statewide remedy has nothing to do with whether the challenged statute is unconstitutional across the board, or whether it has discrete provisions or applications that can be severed and preserved. Even when

---

4. Op., R.167, PageID#2662–2663.
5. Op., R.167, PageID#2662 ("[T]he Court construes Plaintiffs' requested relief as an injunction to enjoin all provisions of SB1, except the private right of action codified at § 68-33-105."); Op., R.167, PageID#2663 ("[A]ny relief provided Plaintiff pursuant to the Motion will not impact SB1's ban on such surgeries.").

a plaintiff demonstrates that a statute is unconstitutional in all its applications, a district court *still* cannot enjoin enforcement against non-parties unless it has certified a plaintiff class or unless the plaintiff has shown that broader relief is needed to redress its injuries. *See Califano* v. *Yamasaki*, 442 U. S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*" (emphasis added)).

The district court appears to believe that a finding of "facial" unconstitutionality means that it can pretend as though SB 1 has been formally revoked, and that it can therefore enjoin state officials from enforcing the statute against anybody. *See Speet v. Schuette*, 726 F.3d 867, 871 (6th Cir. 2013) (falsely claiming that "[a] facial challenge to a law's constitutionality is an effort . . . 'to take the law off the books completely.'" (citation omitted)). That is a textbook example of the writ-of-erasure fallacy. Courts resolve cases or controversies between named litigants. They cannot act directly on legislation,[6] and they cannot convert lawsuits into de facto class actions simply by declaring a challenged statute "unconstitutional on its face." The Court should, at the very least, stay the preliminary injunction to the extent it protects anyone other than the named plaintiffs. *See United States v. National Treasury Employees Union,* 513 U.S. 454, 477–78 (1995) ("[W]e neither want nor need to provide relief to nonparties when a narrower remedy will fully protect the litigants").

---

6. *See Whole Woman's Health I*, 141 S. Ct. at 2495 ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves.").

## CONCLUSION

The motion for stay pending appeal should be granted.

Respectfully submitted.

 /s/ Jonathan F. Mitchell 

|  |  |
|---|---|
| Gene P. Hamilton | Jonathan F. Mitchell |
| Vice-President and General Counsel | Mitchell Law PLLC |
| America First Legal Foundation | 111 Congress Avenue, Suite 400 |
| 300 Independence Avenue SE | Austin, Texas 78701 |
| Washington, DC 20003 | (512) 686-3940 |
| (202) 964-3721 | jonathan@mitchell.law |
| gene.hamilton@aflegal.org |  |
| Dated: July 3, 2023 | *Counsel for Amicus Curiae* |

# CERTIFICATE OF COMPLIANCE

with type-volume limitation, typeface requirements,
and type-style requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 2,585 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.

Dated: July 3, 2023

      /s/ Jonathan F. Mitchell
      JONATHAN F. MITCHELL
      *Counsel for Amicus Curiae*

# CERTIFICATE OF SERVICE

I certify that on July 3, 2023, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Sixth Circuit and served through CM/ECF upon all counsel of record in this case.

 /s/ Jonathan F. Mitchell 
Jonathan F. Mitchell
*Counsel for Amicus Curiae*