No. 23-5600

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

————————

L.W., by and through parents and next friends, Samantha Williams and
Brian Williams, et al., *Plaintiffs-Appellees*,

and

UNITED STATES OF AMERICA, *Intervenor-Appellee*,

v.

JONATHAN THOMAS SKRMETTI, in his official capacity as the
Tennessee Attorney General and Reporter, et al., *Defendants-Appellants*.

————————

On Appeal from the United States District Court for the
Middle District of Tennessee (No. 3:23-cv-00376) (Richardson, J.)

---

## REPLY IN SUPPORT OF EMERGENCY MOTION FOR STAY OF
## PRELIMINARY INJUNCTION PENDING APPEAL

---

JONATHAN SKRMETTI
  Attorney General & Reporter
CLARK L. HILDABRAND
  Senior Counsel
STEVEN J. GRIFFIN
RYAN N. HENRY
BROOKE A. HUPPENTHAL
  Assistant Attorneys General
OFFICE OF THE TENNESSEE ATTORNEY
GENERAL & REPORTER
P.O. Box 20207
Nashville, Tennessee 37202
(615) 253-5642
clark.hildabrand@ag.tn.gov

ADAM K. MORTARA
LAWFAIR LLC
40 Burton Hills Blvd., Suite 200
Nashville, TN 37215
(773) 750-7154
mortara@lawfairllc.com

CAMERON T. NORRIS
TIFFANY H. BATES
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com

**TABLE OF CONTENTS**

INTRODUCTION....................................................................................................1

ARGUMENT ......................................................................................................2

   I.   Tennessee will likely succeed on appeal ................................................. 2

   A. The Act is likely constitutional......................................................... 2

      1.  The Act equally protects minors of both sexes .......................... 2

      2.  Transgender individuals are not a quasi-suspect class............... 4

      3.  Parents lack a fundamental right to subject their children to such harmful procedures.................................................... 5

      4.  The Act survives any level of scrutiny....................................... 6

   B. The district court could not enjoin enforcement statewide .............. 8

   C. Plaintiffs did not prove that a preliminary injunction was necessary to prevent their alleged harms................................................ 9

   II.  Tennessee suffers irreparable harm without a stay............................. 11

   III.  Tennessee wins the balance of equities and public interest.................. 12

CONCLUSION ................................................................................. 13

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bostock v. Clayton Cnty.*,
 140 S.Ct. 1754 (2021)...............................................................1, 2, 5
*Brandt v. Rutledge*,
 47 F.4th 661 (8th Cir. 2022) .........................................................8, 9
*Bristol Reg'l Women's Ctr. v. Slatery*,
 7 F.4th 478 (6th Cir. 2021) (en banc) ...............................................6
*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*,
 511 F.3d 535 (6th Cir. 2007) ...........................................................10
*Constructors Ass'n of W. Pa. v. Kreps*,
 573 F.2d 811 (3d Cir. 1978)............................................................11
*Dobbs v. Jackson Women's Health Org.*,
 142 S.Ct. 2228 (2022)..............................................................1, 6, 7
*Doe v. Ladapo*,
 2023 WL 3833848 (N.D. Fla. June 6) ...............................................9
*Geduldig v. Aiello*,
 417 U.S. 484 (1974)............................................................................6
*Kentucky v. Biden*,
 57 F.4th 545 (6th Cir. 2023) ..............................................................8
*Meriwether v. Hartop*,
 992 F.3d 492 (6th Cir. 2021) ..............................................................5
*Nguyen v. INS*,
 533 U.S. 53 (2001)..............................................................................3
*Ondo v. City of Cleveland*,
 795 F.3d 597 (6th Cir. 2015) ..............................................................5
*Parham v. J.R.*,
 442 U.S. 584 (1979)............................................................................6
*Preterm-Cleveland v. McCloud*,
 994 F.3d 512 (6th Cir. 2021) (en banc) .............................................8
*Prince v. Massachusetts*,
 321 U.S. 158 (1944)............................................................................6
*SFFA v. Harvard*,
 2023 WL 4239254 (U.S. June 29) ...................................................1, 2
*Siegel v. LePore*,
 234 F.3d 1163 (11th Cir. 2000) .........................................................11

*Smith v. City of Salem*,
  378 F.3d 566 (6th Cir. 2004) ................................................................2
*Trump v. Int'l Refugee Assistance Project*,
  582 U.S. 571 (2017)...........................................................................11
*United States v. Virginia*,
  518 U.S. 515 (1996)..............................................................................3
*Washington v. Glucksberg*,
  521 U.S. 702 (1997)..............................................................................6

## Statutes

Tenn. Code Ann. §39-15-213 ..................................................................6
Tenn. Code Ann. §68-33-103 ..................................................................3
Tenn. Code Ann. §68-33-104 ................................................................12

## Other

Herner, *VUMC ceases operations at pediatric transgender clinic*, Nashville Post
  (June 14, 2023), perma.cc/T9PG-RVHR.............................................1
Webster, *American Dictionary of the English Language* (1865) .............................3

iii

## INTRODUCTION

Preliminary injunctions are for clear cases. But the district court here, without a word of encouragement from this Court, declared a new quasi-suspect class. Its sex-discrimination analysis was premised on an extension of *Bostock* that *Bostock*'s author says is "implausible on its face." *SFFA v. Harvard*, 2023 WL 4239254, at *59 (U.S. June 29) (Gorsuch, J., concurring). And its substantive-due-process logic fails after *Dobbs*.

As for irreparable harm, Plaintiffs surely *know* whether Vanderbilt has agreed to resume treatment. Vanderbilt communicates with these patients via email. *Cf.* Herner, *VUMC ceases operations at pediatric transgender clinic*, Nashville Post (June 14, 2023), perma.cc/T9PG-RVHR. Yet Plaintiffs refuse to inform this Court and hide behind the district court's speculation, reasonably challenged by Tennessee, that a preliminary injunction would cause Vanderbilt to resume treatment. The district court manifestly erred by not giving Tennessee the evidentiary hearing it requested to explore this.

Without a stay, numerous children will suffer lifelong harms. Newly initiated administration of puberty blockers and cross-sex hormones on physically healthy minors will reduce their bone density, stunt mental development, and sterilize them. This Court should issue a stay.

1

## ARGUMENT

## I.    Tennessee will likely succeed on appeal.

### A.    The Act is likely constitutional.

#### 1.    The Act equally protects minors of both sexes.

Plaintiffs lean on *Bostock*'s Title VII reasoning about the hiring-and-firing of employees.  But the morning after the district court confidently declared that *Bostock*'s "rationale is applicable to Plaintiffs' equal protection claim," Op., R.167, PageID#2685, its author called such a move "implausible on its face," *SFFA*, 2023 WL 4239254, at *59.  Title VII, "enacted at the same time by the same Congress" as Title VI, *id.* at *56, goes "beyond the Equal Protection Clause," *id.* at *60.

With Justice Gorsuch on Tennessee's side, Plaintiffs resurrect an argument from below that not even the district court adopted.  Opp.4-5.  Channeling *Smith v. City of Salem*, Plaintiffs assert that Tennessee is discriminating based on a person's "fail[ure] to act and/or identify with his or her" sex—what *Smith* called "sex stereotyping"—by propagating a stereotype that males and females are biologically different.  378 F.3d 566, 574-75 (6th Cir. 2004).  This Court has not applied this stereotyping idea to medicine, and for good reason.  Sex stereotypes concern whether someone "wear[s] dresses or makeup," not whether someone's body is male or female.  *Id.* at 574.

2

Recognizing physical differences between the sexes "is not a stereotype." *Nguyen v. INS*, 533 U.S. 53, 68 (2001). Those differences are "enduring." *United States v. Virginia*, 518 U.S. 515, 533 (1996). They define sex itself. At the Fourteenth Amendment's ratification, "sex" meant the "physical difference between male and female." Webster, *American Dictionary of the English Language* (1865). A female is an "individual of the sex among animals which conceives and brings forth young," while a male is of the "sex that begets or procreates young, as distinguished from the female." *Id.*

The Act's prohibitions are sex neutral. Referencing sex, as most abortion laws do, is not sex discrimination. And Plaintiffs wrongly act as if Tenn. Code Ann. §68-33-103(a)(1)(A) is the "only" prohibition in the Act. Opps.3-4. *Neither* sex can use *any* puberty blocker or hormone for "[t]reating purported discomfort or distress from a discordance between the minor's sex and asserted identity." §68-33-103(a)(1)(B).

The district court wrongly embraced the fallacy that a procedure provided to one sex to treat gender dysphoria is always "the same procedure" when provided to the other or when provided to treat physical disorders. Op., R.167, PageID#2683. Both sexes use the same puberty blockers, so prohibiting them for gender dysphoria does not even consider sex. *See* 18-States' Br.3-4. Giving puberty blockers to a 12-year-old with healthy pituitary glands and sex organs *causes* the diseased state of

3

hypogonadotropic hypogonadism; giving those same drugs to a 4-year-old undergoing precocious puberty is not the same treatment because doing so *restores* normal sex-gland functioning.  Laidlaw Decl., R.113-7, PageID#1558-66.

Plaintiffs similarly err in assuming that administering cross-sex hormones on physically healthy children is the same as surgically treating a congenital defect or providing hormones to children with physical disorders of sex development.  Opp.5. Boys and girls are physically distinct.  For normal pubertal development, boys need higher testosterone than girls.  Giving testosterone to a 15-year-old boy to rectify his testosterone deficiency is much different from giving a physically healthy girl such high doses that her testosterone levels match a healthy boy, *creating* in girls the diseased state of hyperandrogenism.  Laidlaw Decl., R.113-7,  PageID#1568-74. Conversely, giving excess estrogen to physically healthy boys *creates* the diseased state of hyperestrogenemia.  *Id.* PageID#1575-76.  Providing appropriate treatment to each sex is not sex discrimination.

### 2.    Transgender individuals are not a quasi-suspect class.

Plaintiffs offer no good explanation why reasoning essential to *Ondo v. City of Cleveland*'s holding—that homosexuals are not in a quasi-suspect class—should not govern transgender persons. 795 F.3d 597, 609 (6th Cir. 2015).  Transgender status simply is not "definitively ascertainable at the moment of birth." *Id.*

Plaintiffs pivot to opinions that are nonprecedential or off-point.  This Court

has declined to apply cases like *Harris Funeral Homes* outside the Title VII context. *Meriwether v. Hartop*, 992 F.3d 492, 510 (6th Cir. 2021) ("*Harris* does not resolve this case."); *cf. Bostock v. Clayton Cnty.*, 140 S.Ct. 1731, 1754 (2021) (affirming *Harris*'s judgment; disagreeing with its reasoning). Even the United States concedes this Court has never "explicitly examined the question" of whether transgender status is a quasi-suspect class. U.S. Mem., R.41, PageID#523. *Ondo*'s reasoning controls.

Even if *Ondo* were irrelevant, the Act does not discriminate based on transgender status. The Act does not use the term "transgender" once and is hardly comparable to de jure racial segregation. Opp.8. Plaintiffs offer no more than a bare assertion that "cisgender minors" cannot experience gender dysphoria, Opp.8 n.3, ignoring both the lax standards for diagnosis, U.S. PI Resp.8, R.135, PageID#2310, and the treatment of detransitioners. Plaintiffs themselves acknowledge many transgender minors do not use the prohibited treatments, Opp.8, creating a "lack of identity" between transgender status and the treatments. *Geduldig v. Aiello*, 417 U.S. 484, 496 n.20 (1974). The classification here is by age.

### 3. Parents lack a fundamental right to subject their children to such harmful procedures.

Plaintiffs contort *Kanuszewski* in ways that are irreconcilable with the Supreme Court's rejection of the idea that "the right to refuse unwanted medical treatment could be some-how transmuted into a right to" receive a specific treatment.

5

*Washington v. Glucksberg*, 521 U.S. 702, 725-26 (1997). Their broadly defined fundamental right would turn upside down the principle that the "state's authority over children's activities is broader than over like actions of adults," not narrower. *Prince v. Massachusetts*, 321 U.S. 158, 168 (1944). *Dobbs v. Jackson Women's Health Organization* establishes that rational-basis review is the right standard for health-and-safety measures. 142 S.Ct. 2228, 2245-46 (2022). So too here.

A "state is not without constitutional control over parental discretion in dealing with children when their physical or mental health is jeopardized." *Parham v. J.R.*, 442 U.S. 584, 603 (1979). Among other laws, Tennessee prohibits elective abortions of unborn children, Tenn. Code Ann. §39-15-213, and bans tattooing minors even with parental consent, §62-38-211(a). Tennessee has an obligation to "safeguard[]" children from medical abuses and give them "opportunities for growth into free and independent well-developed men" and women. *Prince*, 321 U.S. at 165. The Fourteenth Amendment does not bar prohibiting chemical castration.

### 4. The Act survives any level of scrutiny.

Plaintiffs urge the Court to "second-guess" Tennessee's "medical and scientific judgments." *Bristol Reg'l Women's Ctr. v. Slatery*, 7 F.4th 478, 483 (6th Cir. 2021) (en banc). The district court was wrong to "depart[] from the normal rule that courts defer to the judgments of legislatures" even "in areas fraught with medical

and scientific uncertainties." *Dobbs*, 142 S.Ct. at 2268. The Act, "like other health and welfare laws, is entitled to a strong presumption of validity." *Id*. at 2284.

The paper testimony of Plaintiffs' experts does not make the Act unconstitutional. Plaintiffs do not clearly win the battle of the experts and should not have received preliminary relief. Mot.14-17. For example, Plaintiffs cannot explain the comprehensive literature reviews by national health authorities in Europe making clear that the research regarding the safety and efficacy of hormonal and surgical treatments for gender dysphoria in minors is, indeed, of poor quality and that these treatments are experimental. Román Decl.¶¶14-38, R.113-6, PageID#1521-31; Cantor Decl.¶¶70-87, R.113-3, PageID#1125-34. There are in fact no reliable studies that demonstrate the prohibited treatments improve mental health relative to treatments, like counseling, that lack medical risk. *Id*.¶¶147-53, 177-200, PageID#1158-61, 1174-82. For risks, Plaintiffs have no response to how hormone treatments are likely to sterilize children, especially when preceded by puberty blockers. Laidlaw Decl.¶155-56, R.113-7, PageID#1576-77.

The Act's approach—postponing treatment until adulthood—is far better tailored than WPATH's unbounded approach. Some European countries allow these procedures in controlled research settings, Opp.14, but the Fourteenth Amendment does not require research exceptions. Plaintiffs have not claimed such research is ongoing in Tennessee, and "facial attacks are not the proper procedure for

challenging the lack of" an "exception." *Preterm-Cleveland v. McCloud*, 994 F.3d 512, 529 (6th Cir. 2021) (en banc). A "prohibition on" these treatments for minors was "the least restrictive way to further" Tennessee's "compelling interest in preventing" these identified harms. *Id.* at 548 (Bush, J., concurring).

### B.    The district court could not enjoin enforcement statewide.

Plaintiffs concede that statewide relief must be "necessary" to remedy their injuries, Opp.21, but they flunk that test. Even crediting the district court's speculation (it is supposed to be Plaintiffs' burden) that no healthcare provider would treat Plaintiffs unless it could treat all minors, an injunction could have been limited to Vanderbilt—minor Plaintiffs' provider in Tennessee. Speculation is not enough anyway. *Kentucky v. Biden*, 57 F.4th 545, 557 (6th Cir. 2023). Plaintiffs claim the district court's conjectures about Vanderbilt's plans were "based on the court's thorough understanding of the record," Opp.21, but they notably fail to cite anything. There is nothing: no testimony from any provider, no study. The assertion is also implausible on its face, since Plaintiffs' own doctor still works at Vanderbilt providing similar treatments to adults. Mot.18.

As for other courts, Plaintiffs ignore that *Doe v. Ladapo* denied statewide relief. 2023 WL 3833848, at *17 (N.D. Fla. June 6). They cite the Eighth Circuit, but there Arkansas "failed to offer a more narrowly tailored injunction that would remedy Plaintiffs' injuries." *Brandt v. Rutledge*, 47 F.4th 661, 672 (8th Cir. 2022).

8

Tennessee offers two:  An injunction limited to minor Plaintiffs, their parents, and their providers; or one limited to Vanderbilt.  The Eighth Circuit also said those plaintiffs satisfied *Salerno* and faulted Arkansas for identifying only *non*-applications of its statute.  *Id.*  Yet Tennessee identified real applications of the Act that are undeniably constitutional; both the district court and Plaintiffs refuse to explain why they are not.  Mot.19-20.  And unlike the Eighth Circuit, the court here did not apply *Salerno*; it called that decision a "dead letter"—something Plaintiffs do not defend.  Op., R.167, PageID#2722.  Regardless, Plaintiffs do not dispute that even a successful facial challenge cannot justify unnecessarily granting relief to nonparties.

This Court should stay the preliminary injunction to the extent it is overbroad, not leave it in place and "remand" without vacatur.  Opps.22.  If this injunction is overbroad, then Tennessee is entitled to a stay.  Plaintiffs got the injunction they asked for.  It is Plaintiffs' fault they led the district court into error.  (Neither Dr. Lacy nor the United States has standing to obtain statewide relief, a point Plaintiffs do not press on appeal.)

### C.    Plaintiffs still have not shown that a preliminary injunction was necessary to prevent their alleged harms.

The district court implausibly found irreparable harm without an evidentiary hearing.  Though Plaintiffs belatedly suggest otherwise, Opp.20, the question below was whether a preliminary injunction would cause *Vanderbilt* to treat Plaintiffs

again. Vanderbilt is the provider that administered them the prohibited treatments. Plaintiffs never submitted evidence about other in-state providers. By denying Tennessee's request for an evidentiary hearing on this material factual dispute, the district court erred.

Plaintiffs respond to this argument—one *sufficient* to vacate the preliminary injunction—in a footnote. They say hearings are required only when facts are "bitterly contested." Opp.19 n.9. But the law does not turn on how "bitter" a dispute is (obviously); it asks whether the dispute was "material." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 553 (6th Cir. 2007). The debate over Vanderbilt's plans was material (and bitter too).

Vanderbilt's declarations were anything but "plain." Opp.20. Plaintiffs ignore the inherent uncertainty that *preliminary* injunctions provide nonparties like Vanderbilt and simply assert no provider would fear enforcement by Tennessee or private lawsuits. But the question is what *Vanderbilt* thinks, not Plaintiffs. Vanderbilt's declarations are, at best, ambiguous, Mot.21-22, and it is doubtful Vanderbilt would trust Plaintiffs' law-review article over the analysis of a Supreme Court Justice, Opp.19 n.8. Tennessee had a right to test and explore Vanderbilt's ambiguous declarations through live testimony and cross-examination. Mot.22.

Most tellingly, Plaintiffs *know for certain* whether Vanderbilt is, in fact, treating them under the preliminary injunction. Yet they conspicuously refuse to

10

provide the Court with that information.  Their failure highlights how the district court likely abused its discretion by sweeping this dispute under the rug, with no explanation for why it cancelled the hearing.

## II.    Tennessee suffers irreparable harm without a stay.

Tennessee suffers irreparable harm because it cannot enforce its statute, even though at least one non-Vanderbilt provider has committed to violating the Act. Mot.23.  Plaintiffs' assertion that the law is "unconstitutional" begs the merits. Opp.17.  And it's truer of Plaintiffs: With a few exceptions like free speech and voting, denials of individual rights are not necessarily irreparable.  *Siegel v. LePore*, 234 F.3d 1163, 1177 (11th Cir. 2000); *Constructors Ass'n of W. Pa. v. Kreps*, 573 F.2d 811, 820 n.33 (3d Cir. 1978).

The district court gets no deference on a stay.  Mot.6.  This Court must make its "own" equitable judgment.  *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017).  This Court should respect the well-supported judgment of Tennessee's elected representatives.  Mot.14-17.  Plaintiffs wrongfully downplay experiences of detransitioners, Opp.18 n.6, testimony of Vanderbilt doctors about the weaknesses of their practice, Mot.15-16, and a Tennessee parent who resisted Vanderbilt's pressure to transition his child, Noakes Decl., R.113-19, PageID#2074-78.

11

### III.    Tennessee wins the balance of equities and public interest.

The balance of equities favors letting Tennessee enforce its statute—especially as to minors who haven't sued.  Mot.23-24.  Every day the injunction remains in place is another day providers will subject minors to the lifelong harms of puberty blockers and cross-sex hormones, a combination likely to sterilize them. Delayed justice through private suits cannot reverse minors' chemical sterilization or give them back lost adolescence.

These treatments risk harms to Plaintiffs too, though the Act's continuing-care compromise lets them continue current treatments until March 31, 2024.  Tenn. Code Ann. §68-33-104(b)(1).  Plaintiffs discount that exception to no avail.  Plaintiffs offered no evidence that they want any "new or alternative form" of treatment. Opp.18.  No plausible reading of the Act requires Plaintiffs to "titrate down" from now until March.  The only evidence about titration was that Plaintiffs could quickly titrate off in, at most, eight-weeks' time.  Laidlaw Decl.¶¶257, 287, 298, R.113-7, PageID#2155, 2161, 2163.  Finally, that Vanderbilt "is ceasing care altogether as of July 1"—a date that has already passed—favors Tennessee, not Plaintiffs.  Opp.19. Whatever is driving Vanderbilt's choice, it is not provisions of the Act that Defendants that are preliminarily enjoined from enforcing.

12

## CONCLUSION

This Court should stay the preliminary injunction as soon as possible.

Respectfully submitted,

JONATHAN SKRMETTI
 Attorney General & Reporter

/s/ *Clark L. Hildabrand*
CLARK L. HILDABRAND
 Senior Counsel

STEVEN J. GRIFFIN
RYAN N. HENRY
BROOKE A. HUPPENTHAL
 Assistant Attorneys General
OFFICE OF THE TENNESSEE ATTORNEY
GENERAL & REPORTER
P.O. Box 20207
Nashville, Tennessee 37202
(615) 253-5642
clark.hildabrand@ag.tn.gov

July 6, 2023

ADAM K. MORTARA
LAWFAIR LLC
40 Burton Hills Blvd., Suite 200
Nashville, TN 37215
(773) 750-7154
mortara@lawfairllc.com

CAMERON T. NORRIS
TIFFANY H. BATES
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com

13

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 27(d) because it contains 2,600 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface and type style requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in proportionally spaced typeface using Times New Roman 14-point font.

/s/ *Clark L. Hildabrand*
CLARK L. HILDABRAND
 Senior Counsel

July 6, 2023

## CERTIFICATE OF SERVICE

I, Clark L. Hildabrand, counsel for Defendants-Appellants and a member of the Bar of this Court, certify that, on July 6, 2023, a copy of the Reply in Support of Emergency Motion for Stay of Preliminary Injunction Pending Appeal was filed electronically through the appellate CM/ECF system. I further certify that all parties required to be served have been served.

/s/ *Clark L. Hildabrand*

CLARK L. HILDABRAND
 Senior Counsel