Nos. 23-5600 & 23-5609

# In the United States Court of Appeals for the Sixth Circuit

L.W., by and through her parents and next friends, Samantha Williams and Brian Williams, et al.,

*Plaintiffs-Appellees,*

United States Of America,

*Intervenor-Appellee,*

v.

Jonathan Thomas Skrmetti, in his official capacity as the Tennessee Attorney General and Reporter, et al.,

*Defendants-Appellants.*

Jane Doe 1, et al.,

*Plaintiffs-Appellees,*

v.

William C. Thornbury, Jr., M.D., in his official capacity as the President of the Kentucky Board of Medical Licensure, et al.,

*Defendants,*

Commonwealth Of Kentucky Ex Rel. Attorney General Daniel Cameron,

*Intervenor-Appellant,*

On Appeals from the United States District Courts for the Middle District of Tennessee, Nashville Division, and the Western District of Kentucky, Louisville Division
Case Nos. 3:23-cv-00376 & 3:23-cv-230-DJH

## BRIEF OF AMICUS CURIAE AMERICA FIRST LEGAL FOUNDATION IN SUPPORT OF APPELLANTS

Gene P. Hamilton
Vice-President and General Counsel
America First Legal Foundation
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940
jonathan@mitchell.law

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

Table of contents...................................................................................... i

Table of authorities ................................................................................ ii

Interest of amicus curiae........................................................................iv

Argument ............................................................................................... 4

    I.     A preliminary injunction cannot be granted unless the movant makes a "clear showing" that it is entitled to this relief......................4

    II.    The plaintiffs failed to make a "clear showing" of standing ...............6

        A.    The "minor plaintiffs" and the "parent plaintiffs" in *L.W.* failed to make a clear showing of redressability................6

        B.    The "provider plaintiff" in *L.W.* has Article III standing but failed to make a "clear showing" of third-party standing to assert the constitutional rights of her patients ........9

        C.    The plaintiffs in *Doe* failed to make a clear showing of redressability ...........................................................................12

    III.   The Court should address the merits even if it concludes that the plaintiffs failed to make a "clear showing" of standing...............17

    IV.   The district courts' decisions to award statewide relief were indefensible .........................................................................................20

Conclusion .............................................................................................25

Certificate of compliance.......................................................................26

Certificate of service..............................................................................27

# TABLE OF AUTHORITIES

## Cases

*Arizona v. Biden*, 40 F.4th 375 (6th Cir. 2022) ..................................................passim

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997)....................................7

*Barber v. Bryant*, 860 F.3d 345 (5th Cir. 2017) ...........................................................1

*Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976) ........................................................12

*Califano* v. *Yamasaki*, 442 U. S. 682 (1979) ......................................................... 3, 23

*Dep't of Education v. Brown*, 143 S. Ct. 2343 (2023) ........................................... 3, 13

*Dep't of Homeland Security v. New York*, 140 S. Ct. 599 (2020) .............................. 4

*Doe v. Lapado*, --- F. Supp. ----, 2023 WL 3833848 (N.D. Fla.) ..............................24

*Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975) ........................................................ 20

*Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*,
    958 F.3d 532 (6th Cir. 2020) ..................................................................................5

*Ex Parte Young*, 209 U.S. 123 (1908) ..........................................................................5

*Fowler v. Benson*, 924 F.3d 247 (6th Cir. 2019) ..........................................................5

*Hope Clinic v. Ryan*, 249 F.3d 603 (7th Cir. 2001) ............................................... 2, 15

*Kowalski v. Tesmer*, 543 U.S. 125 (2004)................................................................. 11

*Larson v. Valente,* 456 U.S. 228 (1982) .....................................................................10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ...............................................................................................19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...............................................1, 6

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) (per curiam) .........................................5

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc)......................................16

*Overstreet v. Lexington-Fayette Urban County Gov't*,
    305 F.3d 566 (6th Cir. 2002) ..................................................................................5

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) ............................................17

*Service Employees International Union Local 1 v. Husted*,
    698 F.3d 341 (6th Cir. 2012)...................................................................................5

*Southern Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844 (6th Cir. 2017) ...................................................5

*Speet v. Schuette*, 726 F.3d 867 (6th Cir. 2013) .........................................23

*Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83 (1998) ...........................19

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ...................................................3

*Trump v. Hawaii*, 138 S. Ct. 2392 (2018)....................................................... 4

*United States v. National Treasury Employees Union*, 513 U.S. 454 (1995) ...............25

*VR Acquisitions, LLC v. Wasatch County*, 853 F.3d 1142 (10th Cir. 2017) ...............19

*Warshak v. United States*, 532 F.3d 521 (6th Cir. 2008) .......................................4, 24

*Whole Woman's Health v. Jackson*, 141 S. Ct. 2494 (2021)...............................passim

*Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021) ...............................passim

*Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008) ...................................5

**Statutes**

42 U.S.C. § 1983.........................................................................................12

Tenn. Code § 68-33-105 .......................................................................2, 7

**Other Authorities**

David P. Currie, *Misunderstanding Standing*, 1981 Sup. Ct. Rev. 41 .................. 12, 19

## INTEREST OF AMICUS CURIAE

Amicus curiae America First Legal Foundation is a nonprofit organization dedicated to promoting the rule of law in the United States and defending individual rights guaranteed under the Constitution and federal statutes. America First Legal has a substantial interest in this case because it firmly believes, as part of its mission to encourage understanding of the law and individual rights guaranteed under the Constitution of the United States, that a proper understanding of those rights must be informed by reference to their text, and any other rights not expressly mentioned must be deeply rooted in this nation's history and tradition. And further, America First Legal believes that a proper understanding of the law in the United States must include a coherent, consistent understanding of the role of federal courts in deciding cases or controversies presented to them.

All parties have consented to the filing of this brief. No counsel for a party authored any part of this brief. And no one other than the amicus curiae, its members, or its counsel financed the preparation or submission of this brief.

The preliminary injunctions in both cases should be vacated because the plaintiffs failed to make a "clear showing" of standing. A plaintiff who seeks relief in federal court must plead and eventually prove that the requested relief is "likely" to redress his injuries. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" (citation omitted)). And to obtain a preliminary injunction the plaintiffs needed to make a "clear showing" of likely success on the redressability component. *See Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) ("To prevail in an application for a stay or an injunction, an applicant must carry the burden of making a 'strong showing' that it is 'likely to succeed on the merits'" (citations omitted)); *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) ("Because a preliminary injunction 'may only be awarded upon a clear showing that the plaintiff is entitled to such relief,' the plaintiffs must make a 'clear showing' that they have standing to maintain the preliminary injunction.").

Yet there is an obvious redressability problem in both cases that neither of the district courts discussed. Each of the statutory bans on gender-transitioning treatments authorizes private civil lawsuits to be brought against non-compliant providers. Tennessee's statute (SB 1) allows victims of prohibited treatments to sue for compensatory damages, punitive damages, and attorney's fees, and it establishes an extraordinarily long period of limitations that allows suit to be filed "[w]ithin thirty (30) years from the date the

minor reaches eighteen (18) years of age" or "[w]ithin ten (10) years of the minor's death if the minor dies." *See* Tenn. Code § 68-33-105. Kentucky's law (SB 150) authorizes victims to file civil lawsuits until the later of "[t]he date on which the person reaches the age of thirty (30) years" or "[w]ithin three (3) years from the time the person discovered or reasonably should have discovered that the injury or damages were caused by the violation." SB 150, § 4(5).

Yet the plaintiffs are seeking declaratory and injunctive relief only against the states' officials. They are not seeking (and cannot seek) relief that will prevent the filing of private lawsuits against providers who violate the statutes. *See Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 66 & n.21 (1997); *Hope Clinic v. Ryan*, 249 F.3d 603, 605 (7th Cir. 2001) (en banc) ("[P]laintiffs lack standing to contest . . . statutes authorizing private rights of action"). So it is not at all apparent how a judgment that restrains state officials from enforcing SB 1 or SB 150 will cause providers to continue the prohibited treatments when they remain exposed to private lawsuits and potentially ruinous liability. It certainly cannot be assumed that the requested relief will make these services available.

The plaintiffs bear the burden of proving redressability,[1] and they cannot obtain a preliminary injunction by ignoring the redressability component of Article III standing. The plaintiffs needed to produce evidence in the district courts showing that their requested relief would cause providers in Kentucky and Tennessee to barrel ahead despite the continued risk of private lawsuits. And the district courts were obligated to demand evidence of redressability before awarding a preliminary injunction. *See Dep't of Education v. Brown*, 143 S. Ct. 2343, 2350–51 (2023) ("We have an obligation to assure ourselves of litigants' standing under Article III" (citation and internal quotation marks omitted)). Their dereliction was inexcusable, and the Court should vacate both preliminary injunctions for insufficient evidence of standing, as well as the plaintiffs' failure to make a "clear showing" of likely success on their constitutional claims.

The Court should also rebuke the district courts for awarding statewide relief rather than limiting their preliminary injunctions to the named plaintiffs. *See Califano* v. *Yamasaki*, 442 U. S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*" (emphasis added)). The plaintiffs produced no evidence that relief limited to the named parties would be insufficient to redress their injuries, and the statewide relief ordered by the district courts is

---

1.  *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207–08 (2021) ("As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing.").

the latest in a long string of district-court rulings that assume the propriety of universal remedies whenever a district court or a litigant wants to categorically enjoin the enforcement of a statute. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2426–28 (2018) (Thomas, J., concurring) (criticizing this practice); *Dep't of Homeland Security v. New York*, 140 S. Ct. 599, 600–01 (2020) (Gorsuch, J., concurring) (same). The Sixth Circuit has already warned district courts not to extend preliminary injunctions beyond the named litigants unless a remedy of that scope is needed to fully redress their injuries, or to convert lawsuits into de facto class actions absent class certification under Rule 23. *See Warshak v. United States*, 532 F.3d 521, 531 (6th Cir. 2008) ("Nor . . . was it appropriate . . . to grant a preliminary injunction in favor of persons other than [the plaintiff]. . . . [The plaintiff] did not seek class-action relief, and he has made no showing . . . why the injunction needed to run in favor of other individuals in order to protect him." (citation omitted)); *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring). A more emphatic reminder is needed given the district courts' blatant disregard of this Court's instructions.

## ARGUMENT

### I. A Preliminary Injunction Cannot Be Granted Unless The Movant Makes A "Clear Showing" That It Is Entitled To This Relief

Both the Supreme Court and this Court have repeatedly held that a preliminary injunction is an "'extraordinary'" remedy, which cannot issue "'unless the movant, *by a clear showing,* carries the burden of persuasion.'"

*Mazurek v. Armstrong*, 520 U.S. 968, 971, 972 (1997) (emphasis in original) (citation omitted); *see also Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008) (similar); *Whole Woman's Health I*, 141 S. Ct. at 2495 (applicant for a preliminary injunction must make a "'strong showing'" that it satisfies all four requirements) (citation omitted); *Ex parte Young*, 209 U.S. 123, 166 (1908) ("[N]o injunction ought to be granted unless in a case reasonably free from doubt."); *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (holding that a preliminary injunction "should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it."); *SEIU Local 1 v. Husted*, 698 F.3d 341, 344 (6th Cir. 2012) (similar); *Southern Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("'A preliminary injunction' . . . should 'only be awarded upon a clear showing that the plaintiff is entitled to such relief'" (citations omitted)); *Fowler v. Benson*, 924 F.3d 247, 256 (6th Cir. 2019) (similar); *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 539 (6th Cir. 2020) (similar).

Each of the district courts acknowledged this demanding standard at the outset of its opinion. *See Doe* Op. R.61, PageID#2300 (recognizing that the plaintiffs must show "a strong likelihood of success on the merits" to obtain a preliminary injunction); *L.W.* Op. R.167, PageID#2660 ("'A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it.'" (quoting *Overstreet*, 305 F.3d at 573)). Yet each of them went

5

ahead and awarded a preliminary injunction even though the plaintiffs fell far short of a "clear showing" of standing, and even though their constitutional claims rest on a novel and debatable application of the Supreme Court's Fourteenth Amendment doctrines.

## II.   The Plaintiffs Failed To Make A "Clear Showing" Of Standing

Each set of plaintiffs failed to make a "clear showing" of standing.

### A.   The "Minor Plaintiffs" and the "Parent Plaintiffs" In *L.W.* Failed To Make A Clear Showing Of Redressability

The *L.W.* plaintiffs consist of three "minor plaintiffs" who wish to obtain the treatments outlawed by SB 1,[2] five individuals who are parents of these minor children (the "parent plaintiffs"),[3] and one "provider plaintiff" (Susan Lacy) who has been providing the prohibited treatments to minors in Tennessee. *See L.W.* Complaint, R.1, PageID#4–5. None of the minor plaintiffs or provider plaintiffs made a clear showing of redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " (citation omitted)).

There is no evidence or reason to believe that a judgment that restrains the state's officials from enforcing SB 1 will cause providers in Tennessee to

---

2.   The names that the minor plaintiffs are using in this lawsuit are L.W., Ryan Roe, and John Doe.

3.   The parent plaintiffs' names are Brian Williams, Samantha Williams, Rebecca Roe, James Doe, and Jane Doe.

offer the prohibited services. SB 1 not only subjects non-compliant providers to penalties imposed by the attorney general and state licensing authorities, it also creates a private right of action that allows any minor (or parents of a minor) harmed by the forbidden treatments to sue for damages. *See* Tenn. Code § 68-33-105. The plaintiffs did not (and cannot) request an injunction against the enforcement of this private cause of action because none of the named defendants have any role in enforcing it. *See Whole Woman's Health II*, 142 S. Ct. 522, 532. So the plaintiffs (and the district court) needed to show that a judgment against the state's officials, which does not bind the state courts or non-parties to the lawsuit,[4] will cause Vanderbilt University Medical Center (VUMC) or other providers in Tennessee to continue offering the services outlawed by SB 1—even though the requested relief does nothing to remove the threat of ruinous civil liability imposed by section 68-33-105.

The plaintiffs failed to make a "clear showing" that VUMC or any other provider will violate SB 1 and expose themselves to private civil lawsuits if the state defendants are enjoined. The only piece of evidence that the plaintiffs submitted on this issue was a carefully hedged declaration from C. Wright Pinson, which does more to undermine than support their case. *See* Pinson Decl., R.113-1, PageID#1065–1067. Paragraph 7 of Pinson's declaration says that Vanderbilt University Medical Center will not offer *any* hor-

---

4.  *See Arizonans for Official English*, 520 U.S. at 66 & n.21.

mone therapy to minors after SB 1 takes effect, even under the continuing-care exception:

> After the Act was signed into law, VUMC reviewed the Act and determined that on and after the Effective Date it could no longer offer any Hormone Therapy to minor patients. VUMC has communicated this determination to its patients through communications distributed through various media . . .

Pinson Decl. ¶ 7, R.113-1, PageID#1066. But then Pinson tacks on this cryptic passage in paragraph 9:

> Should enforcement of the Act's provisions prohibiting Hormone Therapy be deferred, delayed or enjoined, VUMC would continue to provide Hormone Therapy consistent with prevailing standards of care for persons with gender dysphoria to those minor patients of VUMC for whom such care is clinically appropriate, given the assessment of the patient's condition.

Pinson Decl. ¶ 9, R.113-1, PageID#1067. The condition described in paragraph 9—a ruling that enjoins "enforcement of the Act's provisions prohibiting Hormone Therapy"—is unclear on whether VUMC needs an order that enjoins enforcement only by the named defendants, or whether it needs a ruling that also enjoins enforcement by private-party litigants under section 68-33-105.

The most natural reading of Pinson's declaration is that Vanderbilt needs an injunction that blocks enforcement of SB 1's provisions by *everyone* before it will provide hormone therapy. But that relief is unattainable,[5] and the

---

5.  *See Whole Woman's Health II*, 142 S. Ct. at 535 ("[N]o court may 'lawfully enjoin the world at large'" (citation omitted)).

plaintiffs are not requesting it. The redressability inquiry, however, turns on whether the *requested* relief will cause providers in Tennessee to provide hormone therapy despite the ongoing threat of private civil liability. Pinson's declaration is coy (perhaps deliberately so) on this question, and the plaintiffs failed to provide any evidence that any other provider in Tennessee will provide hormone therapy and risk private lawsuits if the state defendants are enjoined. So the minor plaintiffs and the parent plaintiffs failed to make a "clear showing" of redressability.

> **B.    The "Provider Plaintiff" In *L.W.* Has Article III Standing But Failed To Make A "Clear Showing" Of Third-Party Standing To Assert The Constitutional Rights Of Her Patients**

The only plaintiff in *L.W.* who made a "clear showing" of Article III standing was Dr. Lacy, the "provider plaintiff" who claims that the defendants' enforcement of SB 1 is threatening her with the loss of her medical license if she provides services to patients in violation of the statute. *See* Lacy Decl. ¶ 19, R.28, PageID#242. Unlike the minor plaintiffs and the parent plaintiffs, Dr. Lacy does not need to prove that a favorable judgment will cause her (or other providers) in Tennessee to offer the services prohibited by SB 1, because Dr. Lacy's alleged injury is the threat that SB 1 might be enforced against her by state officials. A judgment that restrains state officials from enforcing SB 1 will redress Dr. Lacy's injury by removing that threat, even if it continues to leave Dr. Lacy exposed to private lawsuits and even if it continues to deter Dr. Lacy from providing the prohibited services. *See Lar-*

*son v. Valente,* 456 U.S. 228, 244 n.15 (1982) ("[A] plaintiff satisfies the re-dressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury").

The problem for Dr. Lacy is not Article III standing, but the fact that SB 1 does not violate *her* constitutional rights. Dr. Lacy is not asserting the claim that SB 1 violates the substantive-due-process right of parents to direct the upbringing of their children,[6] and the plaintiffs did not argue their section 1557 claims[7] in the motion for preliminary injunction. *See L.W.* Pls.' Mem. of Law in Support of Mot. for Prelim. Inj., R.33, PageID#411–441 (no mention of section 1557 as a basis for preliminary injunctive relief). The only remaining claim that Dr. Lacy is asserting is equal protection. But Dr. Lacy is not contending that the enforcement of SB 1 violates her equal-protection rights; she claims only that it violates the equal-protection rights of her patients. *See L.W.* Complaint, R.1, PageID#37 ("The ban violates the . . . equal protection rights of Dr. Lacy's current and future adolescent patients.").

The plaintiffs therefore needed to make a "clear showing" that Dr. Lacy has "third-party standing" to assert her patients' equal-protection rights.

---

6.  *See L.W.* Complaint, R.1, PageID#37 (conceding that only the "parent plaintiffs" are asserting the parental-rights claim under the Fourteenth Amendment).

7.  *See L.W.* Complaint, R.1, PageID#38–41 (describing the section 1557 claims, which Dr. Lacy is asserting).

The Supreme Court has established a two-part test to determine whether a litigant may assert the constitutional rights of a third party:

> [T]here may be circumstances where it is necessary to grant a third party standing to assert the rights of another. But we have limited this exception by requiring that a party seeking third-party standing make two additional showings. First, we have asked whether the party asserting the right has a "close" relationship with the person who possesses the right. *Powers v. Ohio,* 499 U.S. 400, 411 (1991). Second, we have considered whether there is a "hindrance" to the possessor's ability to protect his own interests. *Ibid.*

*Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004). But the plaintiffs failed to make a "clear showing" of how Dr. Lacy could satisfy these criteria for third-party standing. Their opening brief in support of a preliminary injunction ignored the issue,[8] and their reply brief offered nothing more than a bald assertion unsupported by argument or evidence.[9] The presence of the transgender minors in this litigation defeats any contention that Dr. Lacy's patients face a "hindrance" to suing on their own behalf, and the eagerness of white-shoe

---

8.  *See L.W.* Pls.' Mem. of Law in Support of Mot. for Prelim. Inj., R.33, PageID#411–441 (no argument for third-party standing).

9.  *See L.W.* Pls.' Reply in Support of Mot. for Prelim. Inj., R.146, Page-ID#2520 ("Dr. Lacy therefore has standing to seek relief on their behalf because: (i) she will suffer an injury from the Ban as it forces her to alter care for existing patients and/or threatens her ability to treat those patients in accordance with proper medical guidelines and her ethical obligations; (ii) as a medical provider, she has a close relationship to those patients subject to discrimination under the Ban; and (iii) those patients face meaningful obstacles in enforcing their rights given the extraordinary privacy issues at stake.").

law firms and public-interest litigation outfits to represent transgender patients who sue over laws like SB 1 makes it all but impossible to claim that transgender patients are incapable of protecting their own interests unless their medical providers sue on their behalf.

Finally, neither 42 U.S.C. § 1983 nor the Declaratory Judgment Act allows Dr. Lacy to assert the third-party rights of her patients, even she could somehow satisfy the *Kowalski* test for third-party standing. *See Bates v. Sponberg*, 547 F.2d 325, 331 (6th Cir. 1976) ("42 U.S.C. § 1983 offers relief only to those persons whose federal statutory or federal constitutional rights have been violated."); David P. Currie, *Misunderstanding Standing*, 1981 Sup. Ct. Rev. 41.

### C.    The Plaintiffs In *Doe* Failed To Make A Clear Showing Of Redressability

The plaintiffs in *Doe* consist only of minor patients and their parents, and they face the same redressability issues as the minor plaintiffs and parent plaintiffs in *L.W.* A judgment against the state's officials does nothing to stop the threat of private civil lawsuits under section 4(5) of SB 150, so it cannot be assumed that the requested relief will cause Kentucky providers to provide the desired services and willingly accept the risk of private civil liability. The plaintiffs needed to produce evidence of redressability, and they produced nothing whatsoever.

The plaintiffs' motion for preliminary injunction said nary a word about Article III standing or redressability,[10] and none of their supporting declarations offered any evidence that Kentucky providers would continue the services outlawed by SB 150 given the ongoing risk of lawsuits.[11] The district court also let the redressability issue pass in silence, despite its obligation to raise Article III standing issues on its own initiative. *See Brown*, 143 S. Ct. at 2350–51 ("We have an obligation to assure ourselves of litigants' standing under Article III" (citation and internal quotation marks omitted)).

\* \* \*

The plaintiffs and the district courts overlooked the redressability problems because they appear to be laboring under the belief that a judicial pronouncement of unconstitutionality cancels or suspends the statute itself, rather than merely restraining the named defendants from enforcing the disputed law. *But see Whole Woman's Health I*, 141 S. Ct. at 2495 ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves."); *Arizona*, 40 F.4th at 395–96 (Sutton, C.J., concurring) ("A valid Article III remedy 'operate[s] with respect to specific parties,' not with respect to a law 'in the abstract.'" (quoting *California v. Texas*, 141 S. Ct. 2104 (2021)); *id.* ("[W]e do not remove—'erase'—from legislative

---

10. *See Doe* Pls.' Mot. for Prelim. Inj., R.17, PageID#109–139; *Doe* Pls.' Reply Br. in Support of Mot. for Prelim. Inj., R.52, PageID#1660–1679.

11. *See Doe* Pls.' Supporting Declarations, R.17.1–17.7, PageID#142–291; *Doe* Pls.' Supporting Declarations, 52.2–52.6, PageID#1717–1973.

codes unconstitutional provisions (citing Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 1016–17 (2018)). The plaintiffs' court filings and the district courts' opinions are rife with statements and rhetoric that reflect this misunderstanding of judicial review.

Both the *L.W.* plaintiffs and the *Doe* plaintiffs, for example, repeatedly told the district courts that their requested relief would prevent SB 1 and SB 150 from going "into effect."[12] That is untrue; SB 1 and SB 150 will take effect regardless of whether a federal court awards declaratory or injunctive re-

---

12. *See L.W.* Complaint, R.1, PageID#2 ("Absent intervention by this Court, the law will go into effect on July 1, 2023"); *id.* at PageID#3 ("If the Health Care Ban goes into effect"); *id.* at PageID#4 ("if the law takes effect"); *id.* at PageID#32 ("If the Health Care Ban takes effect"); *id.* at PageID#33 ("the Health Care Ban, if permitted to take effect"); *L.W.* Memorandum of Law in Support of Mot. for Prelim. Inj., R.33, PageID#438 ("If permitted to go into effect, the Ban will inflict on Plaintiffs severe and irreparable harm"); *L.W.* Memorandum of Law in Support of Mot. for Prelim. Inj., R.33, PageID#417 ("Absent intervention by this Court, the law will go into effect on July 1, 2023"); *id.* at PageID#418 ("The Ban will cause immediate and irreparable harm if allowed to take effect"); *Doe* Complaint, R.2, PageID#12 ("Absent intervention by this Court, the Ban will go into effect on June 29, 2023); *id.* ("The Ban violates the constitutional rights of Kentucky adolescents and their parents, and—if it goes into effect—will cause severe and irreparable harm."); *id.* at PageID#25 ("If the Ban goes into effect"); *id.* at PageID#29 (same); *Doe* Pls.' Mot. for Prelim. Inj., R.17, PageID#122 ("Absent a preliminary injunction, the following Treatment Ban will go into effect on June 29, 2023"); *id.* at PageID#125 ("[I]f the Treatment Ban goes into effect").

lief against the state's officials.[13] And no preliminary injunction or final judgment from a federal district court can bind the state judiciary or stop non-parties from initiating private civil lawsuits under SB 1 and SB 150. *See Whole Woman's Health II*, 142 S. Ct. at 532; *Arizonans for Official English*, 520 U.S. at 66 & n.21; *Hope Clinic*, 249 F.3d at 605. The *L.W.* plaintiffs and the *Doe* plaintiffs also claim that courts can "enjoin" statutes themselves, rather than the named defendants charged with enforcing those statutes,[14] and they falsely claim that a preliminary injunction will "preserve the status quo" even though the federal courts are powerless to thwart the private civil actions authorized by SB 1 and SB 150.[15]

The district-court opinions reflect a similar misunderstanding of the judicial role. The district court in *L.W.* said that the plaintiffs were requesting "a statewide injunction of SB1 in its entirety,"[16] even though injunctions op-

---

13. *See Whole Woman's Health I*, 141 S. Ct. at 2495 ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves."); *Arizona*, 40 F.4th at 395–96 (Sutton, C.J., concurring).

14. *See L.W.* Memorandum of Law in Support of Mot. for Prelim. Inj., R.33, PageID#438 ("As the court noted in enjoining a similar Alabama law"); *Doe* Pls.' Mot. for Prelim. Inj., R.17, PageID#115 ("[F]ederal court have enjoined substantively similar bans").

15. *See L.W.* Memorandum of Law in Support of Mot. for Prelim. Inj., R.33, PageID#418 ("[T]he State will not incur any harm if the *status quo* is maintained while this case proceeds."); *id.* ("[F]ederal courts have issued preliminary injunctions to preserve the *status quo* . . . . This Court should do the same."); *Doe* Pls.' Mot. for Prelim. Inj., R.17, PageID#117; *id.* at PageID#128 (same).

16. *L.W.* Op., R.167, PageID#2662.

erate against defendants and not statutes. *See Whole Woman's Health I*, 141 S. Ct. at 2495; *Okpalobi v. Foster*, 244 F.3d 405, 426 n.34 (5th Cir. 2001) (en banc) ("An injunction enjoins a defendant, not a statute."). The district court in *L.W.* later announced that it was imposing "a state-wide injunction of SB1,"[17] once again implying that courts enjoin statutory provisions rather than litigants.[18] The district court in *Doe* wrote that a preliminary injunction would "prevent the law from taking effect on June 29, 2023,"[19] even though the district court's injunction does nothing to stop private citizens from enforcing SB 150 through private civil lawsuits. When district courts and litigants repeatedly deploy nomenclature suggesting that judicially disapproved statutes are formally suspended, it becomes easy for them to miss the Article III redressability issues that arise from the continued enforceability of the private rights of action in SB 1 and SB 150.

It would be helpful for this Court to remind the district courts and litigants in this circuit that: (1) Federal courts are incapable of "enjoining" stat-

---

17. *L.W.* Op., R.167, PageID#2719; *see also id.* ("[A] state-wide injunction of SB1 is necessary to redress Plaintiffs' injuries."); *id.* at PageID#2722 ("[A] state-wide injunction of SB1 during the pendency of this litigation . . . is warranted.").

18. The writ-of-erasure rhetoric in the *L.W.* opinion is puzzling given that the district court acknowledged elsewhere in its opinion that it could not enjoin enforcement of the private right of action. *See L.W.* Op., R.167, PageID#2716–2717; *see also id.* at PageID#2719 ("[A]ny injunction will not affect the private right of action under SB1").

19. *Doe* Op., R.61, PageID#2299.

utes; they can enjoin only the named defendants in a lawsuit;[20] (2) Neither a preliminary nor permanent injunction can prevent a statute from "taking effect";[21] and (3) An injunction from a federal court does not and cannot "preserve the status quo" when state law authorizes private civil lawsuits against those who violate the disputed statute. Repudiating this writ-of-erasure rhetoric would go a long way toward avoiding a repeat of this episode, where the plaintiffs and the district courts shirk their duties to address Article III standing issues, leaving it to an appellate court to demand briefing on jurisdictional issues that should have been dealt with in the district-court proceedings.

## III. The Court Should Address The Merits Even If It Concludes That The Plaintiffs Failed To Make A "Clear Showing" Of Standing

If the Court concludes that the plaintiffs failed to make a "clear showing" of standing to justify a preliminary injunction, it should go on to address the merits as well. Although federal courts are forbidden to "hypothesize" Article III standing "for the purpose of deciding the merits,"[22] this Court would not violate the ban on hypothetical jurisdiction by vacating the prelim-

---

20. *See Whole Woman's Health I*, 141 S. Ct. at 2495 ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves."); *Arizona*, 40 F.4th at 395–96 (Sutton, C.J., concurring) ("A valid Article III remedy 'operate[s] with respect to specific parties,' not with respect to a law 'in the abstract.'" (quoting *California v. Texas*, 141 S. Ct. 2104 (2021)).

21. *See Arizona*, 40 F.4th at 395–96 (Sutton, C.J., concurring) ("[W]e do not remove—'erase'—from legislative codes unconstitutional provisions.");

22. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999).

inary injunctions on the additional ground that the plaintiffs failed to make a "clear showing" of a constitutional violation.

First. This Court is not being asked to definitively resolve whether the district courts have subject-matter jurisdiction over the lawsuits. The Court is determining only whether the plaintiffs made a sufficiently "clear showing" of Article III standing to support a preliminary injunction. A negative answer does not deprive this Court or the district courts of jurisdiction; it means only that the preliminary injunctions should be vacated because they were unsupported by sufficient evidence of redressability at *this* stage of the litigation. It remains possible that the plaintiffs in *L.W.* or *Doe* will prove redressability on remand, perhaps by presenting testimony from providers in Tennessee or Kentucky that unequivocally declare that they will offer the services outlawed by SB 1 and SB 150 despite the ongoing risk of lawsuits. And the federal judiciary will retain jurisdiction over the cases until those final determinations are made.

Second. A court does not need to assure itself of jurisdiction before it denies or vacates a preliminary injunction. It *does* need to assure itself of jurisdiction before entering final judgment (or directing entry of judgment) for the plaintiff or defendant. But a motion for preliminary injunction is decided in a *preliminary* posture—before the parties have fully developed the factual record on the jurisdictional questions—and the court's task is to resolve only whether the plaintiffs have made a *preliminary* showing of Article III standing based on the pleadings and factual record as they currently exist. There is

nothing wrong with a federal district court (or appellate court) assuming for the sake of argument that the plaintiffs made a "clear showing" of Article III standing yet denying (or vacating) a preliminary injunction because the plaintiffs failed to show likely success on the merits. And there is nothing wrong with a federal district court (or appellate court) addressing the merits of the case after determining that the plaintiffs failed to make a "clear showing" of Article III standing at the preliminary-injunction stage. None of this violates *Steel Co.* because no court is entering judgment (or directing entry of judgment) without first assuring that it has jurisdiction to do so. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 95 (1998) (denying the power to "decide the cause of action before resolving Article III jurisdiction").

Finally. Dr. Lacy indisputably has Article III standing to sue over SB 1. And although Dr. Lacy lacks third-party standing to assert any of the constitutional claims, the prudential-standing doctrines are not jurisdictional. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125–26 (2014) ("'[P]rudential . . . standing [is] a doctrine not derived from Article III"); *VR Acquisitions, LLC v. Wasatch County*, 853 F.3d 1142, 1147 n.4 (10th Cir. 2017) ("[P]rudential standing . . . isn't jurisdictional"); *id.* (citing authorities); David P. Currie, *Misunderstanding Standing*, 1981 Sup. Ct. Rev. 41. So there is not even a possible violation of *Steel Co.* if this Court weighs in on the merits of the Tennessee statute.

There are also compelling reasons for this Court to address the merits, even though it is not required to do so. It would further judicial economy for

the Court to resolve the constitutional and remedial issues now, because the plaintiffs might establish Article III standing on remand by supplementing the record. Then the plaintiffs could ask for a new preliminary injunction, and the parties will be back before the Court again litigating the same merits issues that they have already briefed and argued. This Court should also rule on the merits to provide much needed guidance and assurance to state legislatures who might consider laws similar to SB 1 and SB 150. It is crucial for legislators within this circuit to know whether these laws are constitutional or, if they are constitutionally problematic, what needs to be done to fix them.

## IV. THE DISTRICT COURTS' DECISIONS TO AWARD STATEWIDE RELIEF WERE INDEFENSIBLE

The most jarring aspect of rulings below is their decision to extend relief beyond the named plaintiffs and enjoin the defendants from enforcing the disputed statutes against anyone. *See L.W.* Op., R.167, PageID#2719–2722; *Doe* Op., R.61, PageID#2312. Neither of these lawsuits was brought as a class action, and the plaintiffs lack Article III standing to assert the rights of non-parties. The district courts were therefore obligated to limit their remedies to the named plaintiffs and the providers who treat them. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("[N]either declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs, and the State is free to prosecute others who may violate the statute.").

20

The district court in *L.W.* offered two reasons for disregarding these limits on the judicial power, but neither of them holds water. It first claimed that "a state-wide injunction of SB1 is necessary to redress Plaintiffs' injuries . . . because it is far-fetched that healthcare providers in Tennessee would continue care specifically for Minor Plaintiffs when they cannot do so for any other individual to whom SB1 applies." *L.W.* Op., R.167, PageID#2719. But the district court cited no evidence to support this claim—and the plaintiffs did not provide any. All that the district court cited was a bald assertion in the plaintiffs' reply brief that says: "Permitting a provider such as VUMC to treat three patients out of hundreds to whom it previously offered care is hardly a guarantee such treatment will resume." Pls.' Reply Br., R.146, PageID#2528. That won't cut it. As the state points out, adults also receive hormone therapy at VUMC. *See* Mot. for Stay, ECF No. 8-1, at 18 ("The court forgot adults still receive treatment."). But more importantly, the burden is on the plaintiffs to make a "clear showing" that statewide relief is necessary to redress their injuries. *See* section I, *supra*. An ipse dixit is the antithesis of a clear showing, and the plaintiffs needed to produce declarations from VUMC personnel showing that they would provide hormone therapy to the plaintiffs only if statewide relief were granted.

The district court's second reason for flouting *Doran* is even more off base: It claimed it could award statewide relief and convert this lawsuit into a de facto class action because "SB1 is most likely unconstitutional on its face." *L.W.* Op., R.167, PageID#2719–2722. But the district court had no jurisdic-

tion to pronounce SB 1 "unconstitutional on its face" because it admits that the plaintiffs lack standing to litigate SB 1's ban on transgender surgeries,[23] and the plaintiffs are not challenging and cannot challenge SB 1's private cause of action in this pre-enforcement lawsuit. *See Whole Woman's Health II*, 142 S. Ct. at 532. The district court severed SB 1's transgender-surgery ban and private cause of action and excluded them from the scope of its ruling;[24] it cannot turn around after doing this and declare that "SB 1 is likely unconstitutional in all of its applications." *L.W.* Op., R.167, PageID#2722.

It is also a non sequitur to claim that a court can issue a universal remedy that protects non-parties to the litigation whenever it thinks a statute is "unconstitutional on its face." *L.W.* Op., R.167, PageID#2719. The holdings of *Doran* and *Califano* apply regardless of whether a statute is unconstitutional "on its face" or only with respect to some of its provisions or applications. And a plaintiff's entitlement to a universal or statewide remedy has nothing to do with whether the challenged statute is unconstitutional across the board, or whether it has discrete provisions or applications that can be severed and preserved. Even when a plaintiff demonstrates that a statute is unconstitutional in all its applications, a district court *still* cannot enjoin en-

---

23. *L.W.* Op., R.167, PageID#2662–2663.

24. *L.W.* Op., R.167, PageID#2662 ("[T]he Court construes Plaintiffs' requested relief as an injunction to enjoin all provisions of SB1, except the private right of action codified at § 68-33-105."); *id.* at PageID#2663 ("[A]ny relief provided Plaintiff pursuant to the Motion will not impact SB1's ban on such surgeries.").

forcement against non-parties unless it has certified a plaintiff class or unless the plaintiff has shown that broader relief is needed to redress its injuries. *See Califano*, 442 U. S. at 702 ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*" (emphasis added)).

The district court in *L.W.* appears to believe that a finding of "facial" unconstitutionality means that it can pretend as though SB 1 has been formally revoked, and that it can therefore enjoin state officials from enforcing the statute against anybody. *See Speet v. Schuette*, 726 F.3d 867, 871 (6th Cir. 2013) (falsely claiming that "[a] facial challenge to a law's constitutionality is an effort . . . 'to take the law off the books completely.'" (citation omitted)). That is a textbook example of the writ-of-erasure fallacy. Courts resolve cases or controversies between named litigants. They cannot act directly on legislation,[25] and they cannot convert lawsuits into de facto class actions simply by declaring a challenged statute "unconstitutional on its face."

The district court's remedial discussion in *Doe* is even more astounding. It claimed that it could issue a universal remedy because (according to the district court) the state had "failed to offer a more narrowly tailored injunction that would remedy Plaintiffs' injuries." *Doe* Op., R.61, PageID#2312 (ci-

---

25. *See Whole Woman's Health I*, 141 S. Ct. at 2495 ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves."); *Arizona*, 40 F.4th at 396 (Sutton, C.J., concurring) ("[W]e do not remove—'erase'—from legislative codes unconstitutional provisions.").

tation and internal quotation marks omitted). Yet the burden is on the *plaintiffs* to show that a preliminary injunction extending beyond the named parties is necessary to fully redress their injuries; it is not the defendants' task to show that a remedy limited to the named plaintiffs will be adequate in this regard. *See Warshak v. United States*, 532 F.3d 521, 531 (6th Cir. 2008) ("Nor . . . was it appropriate . . . to grant a preliminary injunction in favor of persons other than [the plaintiff]. . . . [The plaintiff] did not seek class-action relief, and he has made no showing . . . why the injunction needed to run in favor of other individuals in order to protect him." (citation omitted)). And in all events, the state *did* offer "a more narrowly tailored injunction that would remedy Plaintiffs' injuries" in its brief opposing a preliminary injunction. *See Doe* Commonwealth's Br., R.47, PageID#515 ("[A]n injunction limited to the parties would do."). The district court claimed that it would be "virtually impossible"[26] to fashion a remedy of that sort, but that is transparently false. It easy to craft a preliminary injunction that restrains state officials from enforcing SB 150 only in response to treatments provided to the named plaintiffs, and other district courts have done so when enjoining the enforcement of similar statutes. *See Doe v. Lapado*, --- F. Supp. ----, 2023 WL 3833848, at *17 (N.D. Fla.).

The Court should, at the very least, vacate the preliminary injunctions to the extent they protect anyone other than the named plaintiffs and their pro-

---

26. *Doe* Op., R.61, PageID#2312.

viders. *See United States v. National Treasury Employees Union*, 513 U.S. 454, 477–78 (1995) ("[W]e neither want nor need to provide relief to nonparties when a narrower remedy will fully protect the litigants"). And if this Court vacates the injunctions across the board, it should still admonish the district courts for awarding classwide relief in the absence of a certified class.

## CONCLUSION

The preliminary injunctions in *L.W.* and *Doe* should be vacated.

Respectfully submitted.

/s/ Jonathan F. Mitchell

| | |
|---|---|
| GENE P. HAMILTON | JONATHAN F. MITCHELL |
| Vice-President and General Counsel | Mitchell Law PLLC |
| America First Legal Foundation | 111 Congress Avenue, Suite 400 |
| 611 Pennsylvania Avenue SE #231 | Austin, Texas 78701 |
| Washington, DC 20003 | (512) 686-3940 |
| (202) 964-3721 | jonathan@mitchell.law |
| gene.hamilton@aflegal.org | |
| | |
| Dated: July 24, 2023 | *Counsel for Amicus Curiae* |

# CERTIFICATE OF COMPLIANCE

with type-volume limitation, typeface requirements,
and type-style requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,492 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Amicus Curiae*

Dated: July 24, 2023

# CERTIFICATE OF SERVICE

I certify that on July 24, 2023, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Sixth Circuit and served through CM/ECF upon all counsel of record in this case.

 /s/ Jonathan F. Mitchell 
JONATHAN F. MITCHELL
*Counsel for Amicus Curiae*